No. 21682.

Charles V. Greco, Dorothy M. Greco and Ella R. Hainline v. Sam L. Pullara, as Administrator of the Estate of Jennie Pullara, Deceased.
(444 P.2d 383)

Decided August 19, 1968.

SEAVY & SEAVY, for plaintiffs in error.

ALBERT G. DAVIS, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

THIS action was commenced by Jennie Pullara against Charles and Dorothy Greco and Ella Hainline, to whom we will refer as defendants, to set aside a deed of trust as being a fraudulent conveyance without consideration and with the intent to hinder, delay, and defraud plaintiff Jennie Pullara of her claim against the Grecos. Prior to trial Jennie Pullara died, and the administrator of her estate was substituted as plaintiff. We will refer to him as such.

Writ of error is directed to a judgment of the Pueblo County district court cancelling the deed of trust from Charles and Dorothy Greco to the Public Trustee for the benefit of Clarence and Ella Hainline. The lawsuit

stems from Jennie Pullara's claim for money lent to Charles and Dorothy Greco in 1953. The Grecos at that time were owners in fee simple of certain real estate in Pueblo County valued at approximately $35,000. On September 30, 1954, with the debt to Pullara unpaid, the Grecos executed a deed of trust to Clarence and Ella Hainline, parents of Dorothy Greco, purporting to secure a promissory note for $21,500 payable on demand to the Hainlines. This deed of trust was recorded on October 2, 1954. Jennie Pullara recovered a judgment against Charles and Dorothy Greco for $26,014.96 on February 9, 1956. At the time of the filing of the second amended complaint in the present action on January 20, 1964, $2,057.55 had been received toward satisfaction of this judgment. Alleging that the debt and security given therefor was a sham, Jennie instituted the suit.

I.

Defendants first argue that the statute of limitations for fraud set forth in C.R.S. 1963, 87-1-10, bars the present action. This section provides as follows:
"Bills for relief on the ground of fraud, shall be filed within three years after the discovery by the aggrieved party, of the facts constituting such fraud, and not afterwards."

Defendants contend that since the complaint on its face shows it was filed more than three years after the recording of the allegedly fraudulent deed of trust, the action should have been dismissed.

Under C.R.S. 1963, 87-1-10, the three year statute of limitations begins to run when the defrauded person has knowledge of facts which in the exercise of proper prudence and diligence would enable him to discover the fraud perpetrated against him. *Parsons v. Shackleford,* 117 Colo. 545, 188 P.2d 587; *Bowman v. May,* 102 Colo. 417, 80 P.2d 327. Defendants argue that the recording of the deed of trust from the Grecos to the Hainlines on October 2, 1954 was notice to Jennie

Pullara causing the statute of limitations to begin to run.

■ In some jurisdictions a fraudulent conveyance of real estate is conclusively presumed to be discovered, therefore constituting notice, when the fraudulent conveyance is filed for record. *See, e.g., Anderson v. King,* 250 Iowa 208, 93 N.W.2d 762; *Aultman v. Kelly,* 236 Miss. 1, 109 So. 2d 344. However, in Colorado the record of a deed of trust or other instrument is notice only to those persons claiming under the same chain of title who are bound to search for it. *Smith v. Russell,* 20 Colo. App. 554, 80 P. 474; *Fish v. East,* 114 F.2d 177 (10th Cir.).

■ At the time the deed of trust was recorded in 1954, Jennie Pullara was a general creditor and not a judgment creditor. It was not until judgment was recovered against the Grecos on February 9, 1956, that Jennie Pullara was put on constructive notice of the deed of trust to the Hainlines. *Bowman v. May, supra; Rose v. Dunkley,* 12 Colo. App. 403, 56 P. 342. There is nothing in the record to show actual notice of the allegedly fraudulent conveyance prior to the date when Jennie Pullara became a judgment creditor. After judgment when search was made for property upon which to levy, notice of the deed of trust became relevant. Therefore, the action was instituted on October 1, 1958, and was timely as measured from the date of the judgment when Jennie Pullara's claim became liquidated.

■ Defendants point out that pursuant to R.C.P. Colo. 18(b), Jennie Pullara could have joined a statement of claim to have the alleged fraudulent deed of trust to the Hainlines set aside with her action for a money judgment filed on February 1, 1955. However, at that time Jennie Pullara did not have actual or constructive notice of the alleged fraudulent deed of trust. Therefore, the statute of limitations did not begin to run until Jennie Pullara became a judgment creditor, as we have already indicated.

## II.

Defendants next argue that the findings of fact and conclusions of law were not supported by the evidence. The issue before the trial court was: Did Charles and Dorothy Greco ever receive $21,500 from Clarence and Ella Hainline and subsequently give them a deed of trust on their property to secure repayment of this amount of money? The trial court found that the Hainlines did not advance this amount of money to the Grecos and that the deed of trust to the Hainlines was executed by the Grecos to defraud Jennie Pullara.

The Grecos testified that the money advanced by the Hainlines to them involved five separate transactions between 1947 and 1952, each transaction being evidenced by a promissory note. The defendant Ella Hainline, mother of Dorothy Greco and beneficiary of the deed of trust at issue, although available at the time of trial, did not appear. Her deposition was admitted into evidence, in which she stated that she did not have in her possession any promissory notes payable to her from the Grecos; that she didn't remember ever loaning the Grecos $21,500 or seeing a deed of trust from the Grecos to herself and her husband; and that no estate had been opened for probate upon the death of her husband. Mary Pullara, daughter of Jennie Pullara, testified that the Grecos had told her that the deed of trust to the Hainlines was merely a "coverup" and that no money had been given to them by the Hainlines.

Suffice it to say that based on this evidence as well as the record as a whole, we conclude that there was substantial evidence to support the trial court's finding that the Hainlines did not advance the Grecos $21,500, or any sum of money, and that the deed of trust at issue was executed with intent to defraud Jennie Pullara. We are bound by that determination on writ of error.

### III.

█ The deed of trust at issue here was executed to Clarence Hainline and Ella Hainline. Defendants argue that upon Clarence Hainline's death, under the laws of intestate succession, one half of his property descended to his widow Ella Hainline, and the other half to his children. According to Ella Hainline's deposition, the Hainlines had three children, including Dorothy Greco. Therefore, defendants contend that the failure to join all the children of Clarence Hainline as his heirs constituted a failure to join indispensable parties under R.C.P. Colo. 12(b) (6), and the judgment should accordingly be reversed and a new trial granted. We do not agree.

When Clarence Hainline died there was no estate probated; no personal representative was appointed; and there was no determination of heirship. It is significant that the note and deed of trust were not in possession of the Hainlines. This is further evidence that the Grecos' deed of trust was nothing but a sham and was not given for any consideration. Since there was no personal representative to join as a party defendant and no determination of heirs, we cannot say that Clarence Hainline's children were indispensable parties.

We also think it significant that during the six years between the time this action was docketed and judgment was entered, when numerous motions were filed, hearings held, as well as a full trial on the merits conducted, defendants never contended that necessary or indispensable parties were not before the court. It was not until the motion for new trial that the defendants first raised this issue. As was stated in *Benger Laboratories Limited v. R. K. Laros Co.*, 24 F.R.D. 450 (E.D.Pa.):

"* * * [R.C.P. Colo.] 12(h) cannot be interpreted to mean that a party with the necessary information to make a motion for joinder of an indispensable party

at his disposal can sit back and raise it at any point in the proceedings, when the only effect of the motion under the circumstances would be to protect himself and not the person alleged to be indispensable. Such an interpretation would violate the direction of [R.C.P. Colo.] 1 that the rules 'shall be [liberally] construed to secure the just, speedy, and inexpensive determination of every action.' "

The judgment is affirmed.

MR. CHIEF JUSTICE MOORE and MR. JUSTICE MCWILLIAMS concur.