In re Raul MUNOZ and Carmen Munoz, Debtors.

Paula LARSEN, Plaintiff/Appellant,

v.

Raul MUNOZ and Carmen Munoz, Defendants/Appellees.

Nos. 88–K–440, 88–K–528.
Bankruptcy Nos. 86 B 5227 J, 87 E 667.

United States District Court, D. Colorado.

March 8, 1990.

Robert K. Reimann, Golden, Colo., Robert M. Fitzgerald, Denver, Colo., for Paula Larsen.

Matthew D. Skeen, Skeen & Pearlman, Denver, Colo., for Raul Munoz and Carmen Munoz.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

The issue in this consolidated bankruptcy appeal is whether a creditor of the estate, Paula Larsen, has standing to bring a § 544(b) fraudulent conveyance action against the debtor, Raul Munoz. The bankruptcy court, in two separate orders, concluded that Larsen lacked standing to bring a fraudulent conveyance action because that right belongs only to the trustee under § 544(b) and Larsen's claim was barred by the applicable statute of limitations. I affirm.

### I. *Facts.*

The facts of this case are undisputed. In 1978, Ms. Larsen commenced an action against Mr. Munoz arising out of his fail-ure to perform adequately certain construction work on property that Ms. Larsen had leased in Tamarac Square. On January 8, 1980, Ms. Larsen obtained a judgment against Munoz for $29,314.84. Munoz paid only a small portion of the judgment. Munoz had previously transferred his interest in the family home to his wife on September 15, 1977, purportedly in contemplation of divorce. Munoz alleged that he had little or no equity in the property when it was transferred.

On June 13, 1986, Munoz filed for Chapter 13 bankruptcy. The case was converted to a Chapter 7 bankruptcy on March 13, 1987. On September 1, 1987, without the bankruptcy court's approval, Larsen commenced an adversary action against Munoz, seeking to have Munoz' transfer of his interest in the home avoided as a fraudulent conveyance under 11 U.S.C. § 544(b). Larsen's action was premised on the fact that she had requested the trustee of the estate, Jeffrey Beattie, to pursue this claim but that Beattie had indicated that there were insufficient funds to do so. Beattie filed a notice to this effect on or about December 14, 1987.

On February 26, 1988, Judge Matheson dismissed Larsen's action, finding that she had no standing to sue because she had not obtained the prior authorization of the bankruptcy court in the main bankruptcy case to bring the action in lieu of the trustee. In addition, the court found that the action was barred by the statute of limitations. The court concluded that, under Colorado law (made applicable through § 544(b)), fraudulent conveyance actions must be commenced within two years of when the cause of action accrues. The court held that Larsen's action accrued when she obtained judgment against Munoz in 1980 and should have searched the real property records to discover assets to satisfy her judgment. Consequently, the action was time-barred. The court upheld its dismissal of Larsen's claim on her motion for new trial.

On October 19, 1987, during the pendency of Larsen's adversary action, Mr. Munoz was granted a discharge in the main bank-

ruptcy case. Ms. Larsen received notice of the discharge, but filed no objections to it. On December 8, 1987, however, she filed a motion to clarify and/or to reconsider the order granting the discharge, seeking to preserve her rights against Munoz for the alleged fraudulent conveyance. While the motion to clarify was pending before Judge Brumbaugh (who was presiding in the main bankruptcy case), Judge Matheson entered his order dismissing Larsen's fraudulent conveyance action. In response to this order, on February 26, 1988, Ms. Larsen then filed a motion in the main bankruptcy case for permission to bring the fraudulent conveyance action on behalf of the estate. On March 23, 1988, Judge Brumbaugh denied both the motion to clarify and the motion to bring the adversary action, adopting Judge Matheson's rationale. The court further found that Ms. Larsen's action was moot because Munoz had been granted a discharge; therefore, Larsen was technically no longer a creditor and could not bring a fraudulent conveyance action.

Ms. Larsen now appeals the orders of Judges Matheson and Brumbaugh, claiming that she has the right to prosecute a fraudulent conveyance action against the debtor because the trustee abandoned his right to do so. Appeal No. 88–K–440 relates to Judge Matheson's order of March 10, 1988 denying a new trial. Appeal No. 88–K–528 relates to Judge Brumbaugh's ruling of March 23, 1988 on the motion to clarify and the motion to file an action for the benefit of the estate.

## II. *Issues.*

A. Creditor's Standing to Bring § 544(b) Fraudulent Conveyance Action.

Section 544(b) of the Bankruptcy Code provides in relevant part that "[t]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim." 11 U.S.C. § 544(b). By its terms, § 544(b) permits the trustee to avoid any transfer that an actual creditor of the estate could avoid under state law. While the rights given the trustee are governed by federal law, the extent and exercise of those rights is determined by state law.

There have been several instances in which a creditor of the estate has sought to assert the rights of a trustee under § 544. As a general rule, however, a creditor has no right to assert such claims because the Code expressly limits the § 544 powers to the trustee, who exercises them for the benefit of the estate and all creditors of the estate. Consequently, many courts have held that an individual creditor has no standing to bring a fraudulent conveyance action under § 544(b). *See, e.g., Nebraska State Bank v. Jones*, 846 F.2d 477, 478 (8th Cir.1988); *Hansen v. Finn (In re Curry & Sorensen, Inc.)*, 57 B.R. 824, 828 (9th Cir. BAP 1986); *K.D. Homes, Inc. v. Fritz (In re Fritz)*, 88 B.R. 434, 436 (Bankr.S.D.Fla. 1988). In addition, such an action by the creditor may be in violation of the automatic stay in bankruptcy under § 362. *See* 3 *Collier on Bankruptcy* ¶ 503.04[b] at 503– 42 n. 71 (L. King 15th ed. 1989).

In a few limited circumstances, however, courts have permitted a creditor to bring such an action. As explained in *In re v. Savino Oil & Heating Co.*, 91 B.R. 655, 656–67 (Bankr.E.D.N.Y.1988) (citations and footnotes omitted),

[t]he commencement of litigation by a trustee or debtor-in-possession on behalf of an estate in bankruptcy under the avoidance provisions is permissive and not mandatory. The responsibilities of a trustee or debtor-in-possession to collect assets and to effectuate the policy of equality of distribution do not *per se* compel litigation by such fiduciaries. To the contrary, a trustee or debtor-in-possession has a substantial degree of prosecutorial discretion to sue or not to sue. If, however, a trustee/debtor-in-possession unjustifiably fails to employ its statutory arsenal of avoiding powers or otherwise abuses its discretion in not suing, a creditors' committee has implied authority to bring an action on behalf of the bankruptcy court.

As a rule, individual creditors ... lack the authority to institute avoidance actions. As indicated, such actions must

be instituted by a trustee, debtor-in-possession or, with court approval, by a creditors' committee upon demonstrating that the trustee or debtor-in-possession unjustifiably declines to sue. This is not to suggest that a bankruptcy court can never authorize an avoidance action on behalf of the estate by an individual creditor in a Chapter 11 case. Fair and orderly bankruptcy administration, however, would dictate that such authority might be granted upon showings of particularly extraordinary circumstances.

See also *Mincey v. Milam (In re Milam)*, 37 B.R. 865, 867–69 (Bankr.N.D.Ga.1984) (echoing the view that the trustee has substantial discretion in deciding whether to bring an avoidance action and noting that creditor's remedy when trustee has failed to carry out his duties is removal of the trustee for cause under § 324). In the few cases cited by Larsen in which the creditor or a creditors' committee has been permitted to maintain an avoidance action, courts have found it imperative that the creditor first seek approval from the bankruptcy court and demonstrate that the claim is potentially meritorious. *See, e.g., Equitable Gas Co. v. Equibank, N.A. (In re McKeesport Steel Castings Co.)*, 799 F.2d 91, 94 (3d Cir.1986) (creditor must have "colorable claim"); *In re Curry & Sorensen, Inc.*, 57 B.R. at 827–28 (aggrieved creditor must make appropriate motion; judicial intervention crucial to determining whether the trustee's failure to commence action is justifiable); *In re Nicolet, Inc.*, 80 B.R. 733, 737 (Bankr.E.D.Pa.1987) (committee must first demonstrate potential merit of case after debtor-in-possession has failed

to proceed on claim); *In re Chernicky Coal Co.*, 67 B.R. 828, 832 (Bankr.W.D.Pa. 1986) (following *McKeesport Steel*); *Unsecured Creditors' Committee v. Farmers Savings Bank (In re Toledo Equip.)*, 35 B.R. 315, 320 (Bankr.N.D.Ohio 1983) (creditor must make appropriate showing before commencing action).

■ In this case, Ms. Larsen did not seek permission from the trustee or the bankruptcy court in the main bankruptcy case before commencing her action,[1] although the trustee later agreed to permit her to prosecute the claim. While some courts have permitted similar actions to go forward absent the prior consent of the trustee or the court, those actions were determined to have the potential for recovery of assets. *See, e.g., Creditors' Comm. for Jermoo's, Inc. v. Jermoo's Inc. (In re Jermoo's, Inc.)*, 38 B.R. 197 (Bankr.W.D. Wis.1984); *Committee of Unsecured Creditors v. Monsour Medical Center (In re Monsour Medical Center)*, 5 B.R. 715 (Bankr.W.D.Pa.1980). As outlined below, Ms. Larsen's action in this case has little, if any, chance for success because it is barred by the statute of limitations. In addition, while Ms. Larsen was attempting to bring this action, Mr. Munoz obtained a discharge in bankruptcy, which included his debt to Ms. Larsen. Ms. Larsen never objected to Mr. Munoz' discharge; consequently, Ms. Larsen is technically no longer a creditor and cannot bring a fraudulent conveyance action against Munoz under Colorado law.[2]

**B. Statute of Limitations.**

■ In addition to dismissing Ms. Larsen's claim for lack of standing, both Judge

1. Larsen argues that it was error for Judge Matheson to have required her to obtain Judge Brumbaugh's permission to file the action in the first instance. I disagree. It is logical that the bankruptcy court administering the case should be the first to consider whether an individual creditor is permitted to file an action on behalf of the trustee, given that the court will be the most familiar with the potential merits of the claim and that an action commenced without its approval may well be in violation of the stay.

2. Ms. Larsen also relies on § 503(b)(3)(B) of the Code as further indication that an individual creditor has standing to pursue a fraudulent conveyance action. That section permits a creditor to claim as an administrative expense the

cost of recovery for the benefit of the estate any property transferred or concealed by the debtor. 11 U.S.C. § 503(b)(3)(B). As noted by one commentator, however, "[it] is logical to assume that the provision speaks to those costs and expenses incurred prior to the commencement of the insolvency proceedings or, at least, such costs and expenses incurred prior to the appointment of the trustee." 3 *Collier on Bankruptcy* ¶ 503.04[b] (L. King 15th ed. 1989) (expressing doubt as to whether a creditor may be reimbursed for expenses incurred *after* the trustee's appointment and noting that court approval may be required to bring an action on behalf of the estate).

Matheson and Judge Brumbaugh held that it was barred by the statute of limitations. Under § 544(b),

"[t]he general rule is that section 544(b) confers upon the trustee no greater rights of avoidance that the creditor himself would have if he were asserting invalidity on his own behalf. Consequently, if the creditor is deemed estopped to recover upon his claim, or is barred from recovery because of the running of a statute of limitations *prior to the commencement of the case,* the trustee is likewise rendered impotent."

4 *Collier on Bankruptcy* ¶ 544.03[2] (L. King 15th ed. 1989) (emphasis added; footnotes omitted). Colorado's statute of limitations with respect to fraudulent conveyance actions is three years. Colo.Rev.Stat. § 13–80–101 (1987).[3] The action accrues on the date that such fraud is discovered or should have been discovered by the exercise of reasonable diligence. *Id.* § 13–80–108(3).

Larsen argues that it was improper for the court to have ruled on the statute of limitations question without permitting her to present evidence as to notice and because Munoz did not raise this issue in his motion to dismiss. In *Greco v. Pullara,* 166 Colo. 465, 444 P.2d 383, 384 (1968), the Supreme Court of Colorado held that a creditor is chargeable with constructive notice of an allegedly fraudulent conveyance (recorded when the creditor is a general creditor) when the creditor becomes a judgment creditor and that the statute of limitations begins to run from this date.

In this case, Ms. Larsen became a judgment creditor in 1980. She concedes that the deed to Mrs. Munoz was recorded before this date. Therefore, the bankruptcy court was correct in ruling that Larsen had notice of the conveyance when she became a judgment creditor in 1980 and that her action was time barred.[4] Ms. Larsen's attempt to "piggyback" onto the claim of an earlier judgment creditor is similarly unavailing. When Ms. Larsen received actual notice of the potentially fraudulent conveyance is irrelevant. Both Ms. Larsen and the earlier judgment creditor are deemed to have constructive notice of the fraudulent conveyance on the date their judgments were recovered. In addition, Ms. Larsen's assertion that Mr. Munoz did not raise the statute of limitations issue is incorrect; violations of state and federal statutes of limitations are the first arguments raised in his motion to dismiss, albeit under the wrong Code and state law provisions. *See* R. Vol. I, Doc. 4a at 1. Regardless, the issue was properly before the bankruptcy court as part of its consideration of the potential merit of Ms. Larsen's claim.

### III. *Conclusion.*

As a general rule, an individual creditor cannot maintain a fraudulent conveyance action against the debtor under § 544(b); the Code grants this power only to the trustee or to the debtor-in-possession, who has the powers of a trustee. In some very limited circumstances, however, courts have permitted individual creditors to sue under § 544 and similar Code provisions when the trustee has failed to bring the action and when the creditor can demon-

---

**3.** Although the bankruptcy court and the parties seem to agree that the statute of limitations for fraudulent conveyance actions in Colorado is two years, my research indicates otherwise. The bankruptcy court and the parties have cited Colo.Rev.Stat. § 13–80–102 (1987) as the relevant statute of limitations. This section provides a general limitations period of two years for certain actions, including tort actions and actions for which no other period of limitation is provided. *Id.* § 13–80–102(1)(a), (i). In my mind, the more appropriate provision is Colo. Rev.Stat. § 13–80–101, which governs actions for fraud, misrepresentation, concealment, or deceit and establishes a three-year limitations period from the date the action accrues. *Id.* § 13–80–101(c). Both of these statutes, how-

ever, became effective in 1986, and do not apply to actions arising before that date. Thus, the predecessor to § 13–80–101(c), Colo.Rev.Stat. § 13–80–109 (repealed 1986), would apply. This section similarly applied a three year statute of limitations. *See also Greco v. Pullara,* 166 Colo. 465, 444 P.2d 383, 384 (1968) (applying a three-year statute of limitations). In any event, whether a two or three-year period applies, Ms. Larsen's action is time barred.

**4.** Judge Matheson added that "the prosecution of this claim to recover a transfer made eleven years ago might well have been the subject of a motion for sanctions pursuant to Bankruptcy R. 9011." R. Vol. I, Doc. 7 at 3.

strate that the claim has the potential for the meaningful recovery of assets into the estate.

In this case, Ms. Larsen commenced her action before requesting court approval to proceed and before obtaining a written declaration from the trustee that he would not prosecute the action. Her failure to obtain prior court approval deprived the court of the opportunity to consider whether the trustee's abandonment of the claim was justified and whether the claim had any realistic chance of succeeding. The court ultimately determined that the claim was not meritorious because it was clearly barred by the statute of limitations. However, substantial court resources were wasted by Larsen's failure to follow the proper procedural mechanism. The bankruptcy court's rulings are affirmed.