William L. HARVEY, Plaintiff–Appellee,

v.

Ruth L. HARVEY, William R. Harvey
and Harlan L. Colburn, as Trustee,
Defendants–Appellants.

No. 91CA1539.

Colorado Court of Appeals,
Div. I.

Sept. 24, 1992.

Rehearing Denied Oct. 22, 1992.

Douglas D. Auer, Denver, for plaintiff-appellee.

Stephen M. Munsinger, Denver, for defendants-appellants.

Opinion by Chief Judge STERNBERG.

The defendants, William R. and Ruth L. Harvey and Harlan L. Colburn, appeal a summary judgment entered in favor of the plaintiff, William L. Harvey, declaring the transfer of funds from William R. to Ruth L. Harvey to be a fraudulent conveyance. We affirm the summary judgment, but remand with instructions to revise the amount of the award.

William L. Harvey is the son of William R. Harvey; Ruth Harvey is William R. Harvey's wife and William L. Harvey's stepmother; and Harlan L. Colburn is Ruth Harvey's son.

In 1987, in a matter related to business dealings between them, the father sued to recover money from the son. The father dismissed his claim in January 1991, but on February 5, the court awarded the son a judgment of $178,427.75 on his counterclaim against the father. On March 11, the son requested issuance of writs of garnishment to certain financial institutions in which he believed the father had accounts.

However, these institutions responded that they had no accounts in the father's name.

In accordance with the provisions of C.R.C.P. 69, the son sought to depose the father and stepmother, but because of their age and health, their counsel filed a motion for a protective order. The court ordered them to designate a representative, and in May 1991, Harlan Colburn appeared at a deposition in that capacity.

Although Colburn submitted documents indicating that several accounts in the names of William R. and Ruth L. Harvey had been closed, he testified that he did not know the whereabouts of funds which had been withdrawn from them.

On the day following the deposition, the son filed a complaint seeking to have all conveyances by the father to the stepmother declared fraudulent and void and asking for a lien on all property of the defendants. He was granted a temporary restraining order enjoining the defendants and the financial institutions from further conveyances or transfers of the father's assets. When no representative of the defendants appeared on the return date, a preliminary injunction was issued.

Within the next several days, the son determined that in February 1991, accounts in the names of Ruth L. and William R. Harvey at three financial institutions were changed to Ruth Harvey's name only and that the accounts were closed on March 12, 1991, with funds, totalling $139,630.53, transferred to an account in the name of Harlan L. Colburn, Trustee, Ruth L. Harvey Trust. Additionally, he determined that prior to closing a checking account containing $36,540.15, Ruth Harvey wrote herself a check for $21,000, which she deposited in her separate account and that the remainder was used by the father to purchase a car which was titled in his wife's name. Finally, the son learned that on the day prior to the deposition, Harlan L. Colburn had requested the issuance of two checks to himself individually, each in the amount of $50,000, but that payment on the checks was stopped after the temporary restraining order issued.

Following a series of motions for additional temporary restraining orders, the court ultimately issued a preliminary injunction prohibiting the transfer of funds from the trust account and amending its earlier injunction to apply only to the father.

Based on these facts, the court granted summary judgment in favor of the son. It held that the timing of the transfers, which occurred just prior to the entry of judgment on the counterclaim and at the time writs of garnishment on that judgment were issued, was evidence of fraudulent intent, and it found that these acts rendered the father insolvent. It further found that, although Ruth Harvey brought assets to the marriage, they had remained in her name and that the bulk of the income to the parties was from investments and earnings of the father. It then concluded that: "The posture of the case leaves no issue as to the status of the fraudulent conveyances of the assets in question, the voidability of such acts, and the Plaintiff's right to Judgment based hereon."

Shortly thereafter, the court amended its summary judgment order to provide for a lien against the trust account and against the car purchased by the father and registered in Ruth Harvey's name. It also entered judgment in favor of the son against Ruth Harvey in the amount of $21,000.

## I.

Referring to a tax return and testimony in the record that the father received interest payments on certain notes, the defendants first argue that a genuine issue of material fact exists regarding whether the father was insolvent at the time of the transfers to his wife. The son contends that, if the undisputed facts prove actual fraudulent intent, he need not show insolvency of the father.

Section 38–10–117, C.R.S. (1982 Repl.Vol. 16A) provides that conveyances of property of a debtor made with the intent to hinder, delay, or defraud creditors shall be void.

■ A conveyance is deemed fraudulent upon proof of actual intent, which may be shown by circumstantial evidence. *United States v. Morgan*, 554 F.Supp. 582 (D.Colo. 1982).

■ A conveyance by a husband to his wife is deemed fraudulent, without regard to intent, if the conveyance is made without fair consideration and if the husband is insolvent at the time of making such conveyance, or if, by reason of such conveyance, he is rendered unable to pay his existing debts. *Gwynn v. Butler*, 17 Colo. 114, 28 P. 466 (1891).

■ When a debtor conveys property to his wife without consideration, and he is insolvent or is made insolvent by the transfer, the burden is on the parties to the conveyance to show that it was not executed for fraudulent purposes. *Thuringer v. Trafton*, 58 Colo. 250, 144 P. 866 (1914). This burden of proof includes a showing of the debtor's solvency. *Myers v. Hayden*, 82 Colo. 98, 257 P. 351 (1927).

It is not entirely clear from the order granting summary judgment whether the court based its decision on the existence of proof of actual intent or upon the presumption of fraud which arises from a voluntary transfer by an insolvent spouse. However, we conclude that in either case there was no unresolved issue of a material fact which would render the court's decision improper.

■ The wife was aware of the pending counterclaim and of the father's indebtedness resulting from it. There is no dispute that she placed all the couple's joint savings in her name on the day before the judgment was entered and that she transferred the funds to a trust account in her name on the day after writs of garnishment were issued. It is also undisputed that she transferred $21,000 to her separate checking account and that the remaining funds in this account were used to purchase a car titled in her name. These facts create strong circumstantial evidence of an intent to hinder, delay, or defraud, and no evidence was submitted by the de-

fendants to refute the inference created by these facts.

■ Additionally, the defendants did not meet their burden of proof to overcome the presumption of a fraudulent conveyance. There is nothing in the record to suggest that the transfer was made for fair consideration. Furthermore, the only evidence that the father was not rendered insolvent by the transfer is an income tax return showing interest income of under $8,000 on notes to the father, an amount substantially less than what he owed under the judgment. This is insufficient evidence to create an issue of fact concerning his solvency at the time of the transfer. *See Gwynn v. Butler, supra.*

Accordingly, we conclude that the court properly determined that, based upon the pleadings, the testimony, the evidence, and the exhibits before it, there was no genuine issue as to the defendants' intent to hinder, delay, or defraud the creditor son.

II.

The defendants also contend that an issue of material fact exists regarding Ruth Harvey's entitlement to the monies from the joint accounts, claiming that she is entitled to one half the funds. We conclude that § 15–15–211(1), C.R.S. (1992 Cum. Supp.) governs this situation, and that the court erred in awarding the full amount of these accounts to the son without consideration of this statute.

■ As a general rule, a judgment creditor can garnish the funds of a depositor only when the depositor is the true owner and can reach only those funds in a joint account equitably owned by the judgment debtor and not the funds equitably owned by the other depositor. *Susman v. Exchange National Bank,* 117 Colo. 12, 183 P.2d 571 (1947).

The ownership of funds in a joint account is governed by § 15–15–211(2), C.R.S. (1992 Cum.Supp.), which provides in pertinent part:

During the lifetime of all parties, an account belongs to the parties in proportion to the net contribution of each to the

sums on deposit, unless there is clear and convincing evidence of a different intent. As between parties married to each other, in the absence of proof otherwise, the net contribution of each is presumed to be an equal amount.

This provision was added as part of a general repeal and reenactment of the statutory article entitled, "Nonprobate Transfers," which became effective July 1, 1991. Colo.Sess.Laws 1991, ch. 116 at 908. It has not been previously construed in an appellate decision.

The previous ownership provision, § 15–15–103(1), C.R.S. (1987 Repl.Vol. 6B), provided in pertinent part:

A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is a preponderance of evidence of a different intent.

■ When a court construes a statute, it must consider the statute as a whole so as to ascertain legislative intent and construe the whole of the act to give a consistent, harmonious, and sensible effect. *Adams v. Colorado Department of Social Services,* 824 P.2d 83 (Colo.App.1991).

■ Here, the new statute, while preserving the implied presumption of ownership relating to the net contributions of "all persons," raises the standard of proof needed to overcome this presumption from a preponderance of the evidence to the higher clear and convincing standard. *See generally People v. Distel,* 759 P.2d 654 (Colo.1988); *CJI–Civ.3d* 3:2 (1988) (defining the two standards). The statute then adds a provision concerning rights between persons married to each other, a situation not addressed in the old version.

This new provision establishes the presumption that married persons have made net contributions to the account in equal amounts and thus own the funds in the account in equal shares. The presumption may be rebutted by a showing of "proof otherwise." Although the standard of proof needed for the more general situation involving multiple parties is stated, there is

no defined standard of proof to rebut the presumption in the more specific instance of married persons.

Ambiguous language in related parts of a statute must be analyzed in context with, and with regard to, its intended purpose as manifested by the statutory scheme. *People v. Warner*, 801 P.2d 1187 (Colo.1990).

Here, we conclude that the General Assembly, after expressly raising the standard for the more general situation, would not have then lowered it again for the more specific situation without equally expressly so providing. This construction results in a harmonious, rather than conflicting, interpretation of the statute. *City of Ouray v. Olin*, 761 P.2d 784 (Colo.1988).

Accordingly, we hold that clear and convincing evidence is required to rebut the presumption set forth in the second sentence of § 15–15–211(2).

Although there was testimony and documentary evidence before the court to indicate that Ruth Harvey kept the property she brought to the marriage, as well as her income, separate, there was conflicting testimony as to what amount, if any, of the funds in the joint accounts she actually owned.

The trial court ordered her to return all funds she removed from the accounts. This was error, as she was presumptively entitled to half of the funds, absent proof shown by clear and convincing evidence rebutting that presumption. The trial court is in the best position to assess the credibility and sufficiency of such evidence and properly determine ownership of the funds in light of our holding.

## III.

There is no merit to defendants' contention that the son's claim is barred by the equitable doctrine that one who seeks equity must do equity.

In support of their contention, defendants allege that the son has been paid more than $200,000 over the past several years, an amount in excess of the judgment awarded in his counterclaim. They also argue that the son's assertion that he was paid less than $600 creates a question of fact.

However, this money was presumably paid for services rendered by the son as manager of the father's investments while the counterclaim judgment was based upon money owed from a business project with the father, a matter which was resolved in the son's favor when the judgment was entered. The defendants did not raise a defense of accord and satisfaction or of payment of the judgment in the case at issue. Nor have they presented evidence that the son received any funds from them after the entry of the counterclaim judgment. Amounts paid to the son for services as manager of the father's investments prior to the entry of the judgment in that case are not relevant to a finding of fraudulent conveyance, and accordingly, we find no equitable bar here.

Therefore, the summary judgment in favor of the son is affirmed, but the cause is remanded for a determination of Ruth L. Harvey's ownership of and right to the funds in the joint accounts consistent with this opinion.

NEY and DAVIDSON, JJ., concur.