In re Paul S. WALDEN, Debtor.

Jeffrey L. HILL, Trustee,
Plaintiff/Appellant,

v.

Paul S. WALDEN and Marie C. Walden,
Defendants/Appellees.

Civil Action No. 95–D–3156.
Bankruptcy Action No. 94–20697.

United States District Court,
D. Colorado.

April 4, 1997.

Harvey Sender, Katch, Sender & Wasserman, Edward Pluss, Denver, CO, for Plaintiff/Appellant.

Glen Keller, Davis, Graham & Stubbs, Denver, CO, for Defendants/Appellees.

## MEMORANDUM OPINION & ORDER

DANIEL, District Judge.

### I. BACKGROUND

This matter is before the Court on Plaintiff/Appellant's appeal of a Judgment entered by the United States Bankruptcy Court for the District of Colorado ("Bankruptcy Court") on December 5, 1995, wherein the Bankruptcy Court dismissed all claims asserted by Plaintiff at the close of Plaintiff's case-in-chief. The Plaintiff/Appellant ("Trustee") timely filed a notice of appeal[1] and subsequently filed his opening appeal brief on March 7, 1996. Paul and Marie Walden, Defendants/Appellees, filed a response brief on March 22, 1996, and the Trustee filed a reply brief on April 4, 1996. After reviewing the parties' briefs, the portions of the underlying record certified for

---

1. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). I review the Bankruptcy Court's Findings of Fact under the clearly erroneous standard of review and review its Conclusions of Law de novo. In re Herd, 840 F.2d 757, 759 (10th Cir.1988).

appeal, and the relevant case law, I am well versed in the premises and find that oral argument would not materially assist the Court in reaching its decision. For the reasons discussed below, I will AFFIRM the Bankruptcy Court's judgment dismissing all of the Trustee's claims, in part, REVERSE the judgment, in part, and remand the case to the Bankruptcy Court for proceedings consistent with this Order.

Paul S. Walden, the debtor and a Defendant in this case, was a successful land developer who financially went under in the wake of the late 1980's downturn in the Denver area real estate market. Specifically, Mr. Walden filed a bankruptcy petition on October 28, 1994. Although this case involves an intricate fact pattern that occurred prior to the filing of the bankruptcy petition, there are three focused issues presented on appeal.

This appeal involves certain transfers of property—attacked by the Trustee as improper and thus voidable—made by Mr. Walden years before his financial woes came to a head. The transfers of property in question occurred in 1985 and 1986.[2] Specifically, in the spring of 1985, Mr. Walden traded his interest in properties known as the Kipling and Alameda properties (Firestone stations), the Fox property (Amoco station), and the Sun Valley Shopette in exchange for a fifteen (15) percent interest held by his wife in the Marpu limited partnership, which was a partnership that owned a half interest in a development known as Spectrum. (See Transcript of Ruling of Bankruptcy Judge Charles E. Matheson ("Transcript") at pp. 5–12, Exhibit A, Trustee's opening brief). Additionally, in December, 1986, Mr. Walden gave a deed of trust to his wife for his one-half interest in their family home, along with a note in the

amount of $140,000. (See Transcript at p. 22).

The issues presented on appeal are:

1. Whether the Bankruptcy Court erred in holding that voiding of a 1986 transfer of a deed of trust from Defendant Paul Warden to his wife was barred by the statute of limitations;

2. Whether the Bankruptcy Court erred in holding that Plaintiff must prove that Defendant Paul Walden was insolvent as a result of the 1985 property transfers to his wife; and

3. Whether the Bankruptcy Court's decision denying the Second Claim for Relief was based on clearly erroneous findings of fact.

See Trustees Opening Brief at p. 2.

## II. ANALYSIS

In the bankruptcy proceeding, the Trustee claimed that the 1985 and 1986 conveyances from Mr. Walden to his wife are voidable, and thus available to the Trustee as proceeds to be included in the bankruptcy estate. See 11 U.S.C. § 544(b).[3] Under Colorado law, "[e]very conveyance ... in lands ... made with the intent to hinder, delay or defraud creditors ... as against the person so hindered, delayed or defrauded shall be void." Colo.Rev.Stat. § 38–10–117 (1996 Supp.). In his ruling, Bankruptcy Judge Matheson concluded that Mr. Walden did not violate § 38–10–117 in relation to the 1985 property swap with his wife. (Transcript at pp. 22, 41–42, discussion at pp. 5–22). On the other hand, Judge Matheson concluded that the 1986 deed of trust transfer did violate § 38–10–117 because the "transfer was made with the intent to hinder or delay [Walden's] credi-

2. In its Order, the Bankruptcy Court held that although a July, 1993 transfer of a deed of trust from Mr. Walden to his wife had all "the classic hallmarks of a fraudulent transfer ... if the [1986] deed of trust is not set aside ... the third claim for relief fails." (Transcript at p. 37). Because I reverse the Bankruptcy Judge's decision as it relates to the 1986 transfer, the Bankruptcy Court will need to reconsider the viability of the third claim for relief.

3. Under 11 U.S.C. § 544(b), a trustee in bankruptcy may seek to void transfers of property that are voidable under state law. Additionally, a

trustee in bankruptcy may step into the shoes of, and assert a claim for, a creditor who is seeking to void a property transfer. In this case, the Trustee stepped into the shoes of Donna Grimshaw, successor to Thomas T. Grimshaw, who was seeking to void the 1985 and 1986 transfers—from Mr. Walden to his wife—in Jefferson County, Colorado District Court (94–CV–1766). Donna Grimshaw was seeking to void the transfers to aid in her collection of a judgment she won against Mr. Walden in Jefferson County, Colorado District Court (93–CV–1380).

tors." (Transcript at p. 30). Nonetheless, Judge Matheson entered judgment in favor of Defendants in regard to both transactions, holding that the Grimshaw lawsuit to have the 1986 transfer voided was barred by the three year statute of limitations, Colo.Rev. Stat. § 13–80–101(c). This prevented the Trustee, who was standing in Grimshaw's shoes, from voiding the transfer. (Transcript at p. 35, discussion at pp. 30–35).

A. *Statute of Limitations*

■ On appeal, the Trustee first attacks Judge Matheson's conclusion that the 1986 transfer from Mr. Walden to his wife, although fraudulent, cannot be voided because Donna Grimshaw's fraudulent conveyance lawsuit was barred by the applicable statute of limitations. (Transcript at p. 35). It is undisputed that under Colorado law the statute of limitations for a lawsuit brought under § 38–10–117 is three years. Colo.Rev.Stat. § 13–80–101(1)(c). The three year period accrues "on the date that such fraud, misrepresentation, concealment, or deceit is discovered or should have been discovered in the exercise of reasonable diligence." Colo.Rev. Stat. § 13–80–108(3). The Trustee argues that Colorado case law mandates that the three year period began to run when Donna Grimshaw became a judgment creditor of Mr. Walden in 1993, and that the judgment enforcement lawsuit was timely filed in 1994. Appellees take the position that Judge Matheson was correct in holding that the three year period began running no later that 1989 because Mr. Grimshaw had a duty to exercise reasonable diligence by investigating Mr. Walden's financial status no later than 1989. The issue confronting me is when did the statute of limitations period begin to run.

In its Order, the Bankruptcy Court held that Mr. Grimshaw had a duty to investigate the financial status of Mr. Walden, presumably which would have resulted in the discovery of the 1986 deed of trust transfer, no later than 1989. The Bankruptcy Court based this conclusion on the nature of the relationship between Mr. Grimshaw and Mr. Walden, and the events that transpired in-volving Mr. Grimshaw and Mr. Walden between 1986 and 1989.

In the mid–1980s, Mr. Grimshaw (who was Mr. Walden's long-time attorney), Mr. Walden, and Mr. Beardsley entered into a joint-venture to build some houses in what was known as the Thraemoor project. By 1986, the Thraemoor venture was in financial difficulty, and the venturers did not have the money to pay their obligations on a note held by the Cherry Creek Bank ("Bank"). Mr. Grimshaw and Mr. Beardsley negotiated a "work-out" with the Bank whereby the joint-venture would dissolve. and each of the three venturers would divide the property and the loan payments. The Bank, however. was concerned about Mr. Walden's credit, and agreed to the work-out on the condition that Mr. Grimshaw and Mr. Beardsley secure Mr. Walden's continuing obligations.

When presented with the terms of the work-out, Mr. Walden informed Mr. Grimshaw and Mr. Beardsley that he was "tapped-out," but that his wife could buy one of the Thraemoor lots of property "free and clear." Thereafter, the parties agreed that Mrs. Walden could buy, outright, one of the Thraemoor lots, and that Mr. Grimshaw and Mr. Beardsley would cover Mr. Walden's remaining debt in exchange for notes of $100,000. At the same time that the terms of this workout were finalized, Mr. Walden gave his wife a deed of trust in the family home, with respect to Walden's one-half interest, and a note in the amount of $140,000. By 1989, the Thraemoor project was dead. No houses were ever built, the Bank foreclosed and took all of the Thraemoor property, and Mr. Grimshaw, Mr. Beardsley and the Waldens each negotiated a general release with the Bank.

Based on these facts, the Bankruptcy Court concluded that Mr. Grimshaw had a duty to exercise reasonable diligence, by investigating Mr. Walden's financial status, no later than 1989. (Transcript at p. 35). Specifically, Judge Matheson found that enough caution flags were flying to charge Mr. Grimshaw with the duty to investigate Mr. Walden's finances when Mr. Walden was not able to come up with the money for the 1986 work-out (especially because his wife was

able to buy a lot free and clear) and certainly when the bank foreclosed on the Thraemoor property in 1989. The Bankruptcy Court concluded that because Mr. Grimshaw never undertook that investigation he never discovered the improper 1986 transfer from Mr. Walden to his wife. The Bankruptcy Court, however, reached this decision without referencing any case law to support its analysis and conclusion. Instead, the Bankruptcy Court focused on the wording of § 13–80–108(3), which states that the statute runs from the date the "act should have been discovered," to support a holding that it is proper policy to require creditors with knowledge of a debtor's financial troubles to investigate whether the debtor is improperly disposing of his property.

■ After reviewing applicable Colorado case authorities, I conclude that the Bankruptcy Court's decision on the duty to discover fraud and how that relates to the running of the statute of limitations is contrary to controlling Colorado law. In *Greco v. Pullara*, 166 Colo. 465, 444 P.2d 383, 384 (1968), the Colorado Supreme Court held that unless a creditor has actual notice of a fraudulent land transfer, the statute of limitations on an action to void that transfer does not begin to run until the creditor has a judgment on the underlying obligation. This rule has been consistently followed by courts interpreting the Colorado statute of limitations relating to actions to void property transfers. *In re Munoz*, 111 B.R. 928 (D.Colo.1990); *Villa National Bank v. Green*, 478 P.2d 681 (Colo. App.1970). The rule followed by these courts is premised on the idea that a general creditor does not have a duty to investigate the financial condition of his debtor and that no constructive notice of fraudulent land transfers accrues until the general creditor becomes a judgment creditor. *In re Munoz*, 111 B.R. at 932; *Villa National Bank*, 478 P.2d at 683.

Appellees argue that the present case is distinguishable from the cited Colorado cases because the Bankruptcy Court held that Mr. Grimshaw was charged with "inquiry notice" instead of "constructive notice" of Mr. Walden's fraudulent land transfer. Appellees support their position by arguing that inquiry notice is a form of actual notice that arises when a person has "knowledge of facts and circumstances so pertinent in character as to enable a reasonably prudent person to investigate and ascertain the ultimate facts." *Colorado Interstate Gas Co. v. Dufield*, 9 Kan. App.2d 428, 681 P.2d 25, 28 (1984); *Thomas v. Evans*, 200 Kan. 584, 438 P.2d 69, 73 (1968) (same). Appellees urge that because Mr. Grimshaw had knowledge that Mr. Walden was suffering financial difficulty, Mr. Grimshaw should have assumed that Mr. Walden was disposing of his property in a fraudulent or otherwise improper manner. Whether or not the concept of inquiry notice relied on by Appellees is a distinct concept from constructive notice,[4] the problem with Appellees' argument—and ultimately the holding of the Bankruptcy Court—is that the Colorado courts have never charged a general creditor with a duty to investigate the finances of a debtor until the general creditor becomes a judgment creditor. Therefore, even if the debtor is showing signs of financial misfortune or reverses, these types of events, under Colorado law, do not create a presumption that the debtor is engaged in fraudulent conduct intended to thwart the valid claims of the general creditor.

The fact that the Colorado courts have never placed a discovery duty on a general creditor as a result of a debtor running into financial difficulty is illustrated by the facts of the *Villa National Bank* and *Greco* cases. For instance, in *Villa National Bank*, the debtor fraudulently transferred his property in August, 1964, and the transfer was recorded in September, 1964. *Villa National Bank*, 478 P.2d at 682. The general creditor

---

4. Although I do not rest my decision solely on this ground, I do not believe that there is a substantive distinction between inquiry notice and constructive notice. Specifically, "[c]onstructive notice is information or knowledge of a fact imputed by law to a person ... because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it. Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact. Constructive notice includes ... inquiry notice." *Black's Law Dictionary* 1062 (6th ed.1990).

became aware of the debtor's financial difficulties no later than November, 1964. *Id.* The general creditor initiated an action to collect his debt in November, 1964, and judgment was entered in his favor in January, 1967. *Id.* In February, 1968, at least three years and three months after the general creditor became aware of the debtor's financial difficulties, he brought suit to void the 1964 property transfer. *Id.* In rejecting a statute of limitations argument, the Court of Appeals held that the statute of limitations on a void of property transfer action runs from the date when the general creditor acquires an interest in the subject property by becoming a judgment creditor. *Id.* at 683. The Court did not focus on the date when the property was actually transferred or recorded, nor did it focus on the date the creditor became aware of the debtor's financial difficulties when establishing the appropriate starting time for the running of the statute. *Id.; see also Greco,* 444 P.2d at 383–84 (similar facts).

For the foregoing reasons, the rule announced in *Greco* and followed in *In re Munoz* and *Villa National Bank* is that the statute of limitations runs from the time that the general creditor receives actual notice, or absent such actual notice, from the time when the duty to investigate the assets of the debtor arises; that is, when judgment enters. *See Greco* 444 P.2d at 384. The Bankruptcy Judge's protestations about this rule being "nonsensical" based on the fact that some transfers of property are subject to being voided many years after the transfer is executed are unpersuasive. (Transcript at p. 31). As a federal judge applying the law of the state of Colorado, it is not my role to make policy choices; instead, it is my duty to follow the law as it has been interpreted by the Colorado courts. *E.g. Murdock v. City of Memphis,* 87 U.S. (20 Wall.) 590, 22 L.Ed. 429 (1874).

Moreover, there are sound policies underlying the rule announced by the Colorado Supreme Court. Specifically, not all transfers of property are subject to voiding, only those transfers undertaken with the intent to thwart the valid claims of creditors. Therefore, a bona fide purchaser for value will not have his or her acquisition of property voided under this rule. Additionally, it is improper to place the onus on a general creditor to discover improper land transfers at the first sign that its debtor has run into financial difficulties. Instead, the better reasoned policy, as reflected by the Colorado cases, is to shift the onus of discovery to the creditor when it acquires some type of legal interest in the assets of its debtor, or in other words, when the creditor obtains a judgment.

There is no evidence noted in the Transcript that Mr. Grimshaw had express actual knowledge that Mr. Walden made an improper transfer of property to his wife in 1986, instead the Bankruptcy Court merely concluded that Mr. Grimshaw should have discovered the improper transfer. (Transcript at p. 35).[5] This is insufficient to start the running of the statute of limitations. Therefore, the statute of limitations on Donna Grimshaw's § 38–10–117 lawsuit began running on August 19, 1993, the day that she acquired a judgment against Mr. Walden in Jefferson County, Colorado District Court (93–CV–1380). Ms. Grimshaw filed her § 38–10–117 suit on September 22, 1994 (94–CV–1766), which occurred within the three year period prescribed by § 13–80–101(c). Therefore, the Trustee cannot be barred from bringing an action in her shoes by virtue of an expired statute of limitations. Accordingly, I must REVERSE the judgment of the Bankruptcy Court with regard to the statute of limitations issue, and remand this case to that Court for further proceedings consistent with this opinion.

**5.** I note, without deciding, that the decision of this Court may have been different if the evidence had shown that Mr. Grimshaw was aware that Mr. Walden was improperly disposing of some of his assets. In that case, the Court would have been more likely to find that Mr. Grimshaw had a duty under the concept of implied actual notice to discover that Mr. Walden was improperly disposing of his interest in his house. The facts presented, however, do not support such a theory. Instead, the facts merely show that Mr. Grimshaw was aware that Mr. Walden was having financial troubles.

**6**

### B. *Proving Insolvency*

██ In his opening brief, the Trustee argues that the Bankruptcy Judge applied an inappropriate legal standard when evaluating the voidability of the 1985 property swap of the business property between Mr. Walden and his wife. Specifically the Trustee argues that the "Bankruptcy Court erred as a matter of law in holding that the Trustee must establish insolvency where it has been established that there [was] actual intent" to hinder, delay or defraud creditors. (Trustee's Opening Brief at p. 13). The Trustee is correct that it would have been inappropriate for the Bankruptcy Judge to require the Trustee to prove that the 1985 swap made Mr. Walden insolvent in order for the Trustee to establish that the transfer was voidable under § 38–10–117. *Harvey v. Harvey*, 841 P.2d 375, 377 (Colo.App.1992) (holding that conveyance can be voided *either* 1) upon circumstantial proof of actual improper intent or 2) when conveyance is between a husband and wife, if conveyance is made without fair consideration and conveyance is made when spouse is insolvent, or the conveyance causes insolvency). The Trustee, however, misapprehends the reasoning and legal standard applied by Judge Matheson.

Contrary to the Trustee's assertion. Judge Matheson never indicated that the Trustee must establish insolvency as a prerequisite to voiding the 1985 property transfer under § 38–10–117. In fact, the Transcript reveals that Judge Matheson applied the two prong test from *Harvey* when determining if the 1985 transfer was voidable. (Transcript at pp. 6–7). In painstaking detail, Judge Matheson considered at least six factors—in addition to analyzing whether the transfer was made during, or created, insolvency—in order to determine whether there was an actual intent to hinder, delay or defraud by Mr. Walden. (Transcript at pp. 13–18, concluding that there was no improper intent). Thereafter, Judge Matheson analyzed whether Mr. Walden was insolvent at the time of the 1985 property swap, or was made insolvent as a result of the swap. (Transcript at pp. 18–22). Therefore, the record is abundantly clear that Judge Matheson applied the appropriate two-prong test from *Harvey* when analyzing whether the 1985 transfer was voidable under § 38–10–117. Accordingly, the Bankruptcy Court's judgment that the 1985 property transfer is not voidable must be AFFIRMED.

### C. *Clearly Erroneous Fact Finding*

In his opening brief, the Trustee asserts that one of the appeal issues is whether the "Bankruptcy Court's decision denying the Second Claim of Relief is based upon clearly erroneous findings of fact." (Trustee's Opening Brief at p. 2). Specifically, the Trustee claims that "the Court's factual finding that Mr. Grimshaw knew or should have known of the fraudulent transfers by 1989 at the latest are clearly erroneous and without factual support in the record." (Trustee's Opening Brief at p. 8). As a first matter I note that the portions of the record designated for appeal by the Trustee contain no evidence in the form of affidavits, depositions. declarations, interrogatories, exhibits admitted into evidence at trial, trial transcripts or the like. Therefore, I could immediately discount the Trustee's argument because there is no evidence contradicting the findings of fact of Judge Matheson. Nonetheless, I will address the issue raised by the Trustee because it implicates a conclusion of law, not a finding of fact.

██ After closely examining the transcript where Judge Matheson made his factual findings, I have uncovered no factual finding that Mr. Grimshaw had express actual knowledge of the 1986 residential property transfer between Mr. Walden and his wife. With regard to Judge Matheson's conclusion that Mr. Grimshaw "should have know" of the fraudulent 1986 transfer between Mr. Walden and his wife (Transcript at p. 35), this is a conclusion of law, not a finding of fact. That is, the issue of when a party is charged with the duty to discover a fact, even though that party has no express actual knowledge of the fact, is a legal issue. Because the Trustee does not offer any evidence disputing any of the facts regarding the nature of the relationship between Mr. Walden and Mr. Grimshaw, the issue of whether Mr. Grimshaw had a duty to inquire about, and thus discover, the 1986 transfer must be

decided as a matter of law. As such, this issue was disposed of in the discussion contained in Section II. A of this Memorandum Opinion and Order.

## III. CONCLUSION

For the reasons stated above, it is hereby

ORDERED that the judgment dismissing all of the Trustee's claims is, AFFIRMED, in part (as it relates to the Bankruptcy Court's finding that the 1985 property transfers are not voidable), REVERSED, in part (as it relates to the Bankruptcy Court's finding that the statute of limitations prevents the Trustee from attempting to void the 1986 property transfers), and REMANDED to the Bankruptcy Court for further proceedings consistent with this Order.