Larry D. SANDS; Frank J. Woods, III; and M & W Associates, a Colorado general partnership, Plaintiffs–Appellants,

v.

NEW AGE FAMILY PARTNERSHIP, LTD., a Colorado limited partnership, and Amelia F. Britvar a/k/a Amy Britvar, Defendants–Appellees.

Nos. 94CA0312, 94CA0413.

Colorado Court of Appeals, Div. V.

May 18, 1995.

Neiley & Alder, Eugene M. Alder, Aspen, for plaintiff-appellant Larry D. Sands.

John H. Case, Aspen, for plaintiffs-appellants Frank J. Woods, III and M & W Associates.

Hale Pratt Midgley Hackstaff & Goldberg, P.C., David H. Goldberg, Barbara J.B. Green, Denver, Dennis B. Green, Aspen, for defendants-appellees.

Opinion by Judge DAVIDSON.

Plaintiffs, Larry D. Sands, Frank J. Woods, III, and M & W Associates, appeal from the judgment of the trial court dismissing their claim for fraudulent conveyance and their request for a charging order against defendants, New Age Family Partnership, Ltd., and Amelia F. Britvar. We affirm in part, reverse in part, and remand with instructions.

In 1984, M & W filed an action for damages against Britvar for breach of a lease agreement. Britvar subsequently joined Sands and Woods as third-party defendants to the suit.

In their answers to Britvar's third-party complaint, Sands and Woods asserted that her claims were frivolous and groundless and requested an award of attorney fees. That litigation resulted in an award of attorney fees to Sands and Woods in 1992 and in a judgment against Britvar on M & W's claims in 1993.

Thereafter, Sands, Woods, and M & W sued to enforce, respectively, the award and judgment against Britvar. They claimed that in 1984 Britvar had fraudulently conveyed certain assets to New Age. They further requested a charging order against Britvar's partnership interest in New Age.

Upon motion of defendants, the trial court found that all claims were barred by the statute of limitations and dismissed the entire complaint.

### I.

Plaintiffs assert, on several grounds, that the trial court erred in dismissing their fraudulent conveyance claims as untimely filed. We address, and reject, each assertion in turn.

### A.

Plaintiffs first claim that the trial court applied the incorrect statute of limita-

tions. Specifically, they contend that the trial court erred by applying the three-year statute of limitations for fraud contained in § 13–80–109, C.R.S. (repealed and reenacted as § 13–80–101(1)(c), C.R.S. (1987 Repl.Vol. 6A)) rather than the four-year statute of limitations for fraudulent conveyances contained in § 38–8–110(1)(a), C.R.S. (1994 Cum. Supp). We disagree.

In July 1991, the Uniform Fraudulent Transfers Act was adopted in Colorado. This act provides, in pertinent part, that a cause of action for fraudulent transfer is extinguished unless it is brought within four years "after the transfer was made or the obligation was incurred." *See* § 38–8–110(1)(a). Noting that the previous fraudulent conveyance statute does not apply to any "transfer made or obligation incurred on or after July 1, 1991," *see* § 38–10–117(2), C.R.S. (1994 Cum.Supp.), plaintiffs assert that the new Uniform Act applies and that, accordingly, their claims are not barred.

Specifically, plaintiffs argue that the date that their judgment against Britvar was entered is dispositive as to whether § 38–10–117(2) or § 38–8–110(1)(a) applies to their claims. This argument is premised upon their contention that "obligation," as used in these statutes, refers to the claim or debt between the debtor and creditor.

According to plaintiffs, either the date of the fraudulent transfer or the date that the claim or debt between the debtor and creditor is incurred, whichever is later, will be the controlling date for purposes of determining whether the old statute or the new Uniform Act applies. Because, under § 38–8–107(5)(b), C.R.S. (1994 Cum.Supp.), an obligation is not incurred until it becomes effective between the parties, if oral, or if written, when the writing is delivered to or for the benefit of the obligee, they reason that Britvar's "obligation" to them was incurred when the trial court entered the judgment and award. This event did not occur until after the effective date of the new Uniform Act. Thus, in their view, the trial court erred in finding that the old statute was applicable. We do not agree.

The Uniform Act provides remedies for transfers made or obligations incurred to third parties if fraudulent as to a creditor. A transfer, as that term is used in the Uniform Act, refers to disposing of or parting with an asset, or an interest in an asset. *See* § 38–8–102(13), C.R.S. (1994 Cum.Supp.). The Uniform Act does not define "obligation."

"Obligation" has various meanings, depending upon the context in which it is used. As a legal term, however, it generally concerns a written promise or other "formal and binding agreement to pay a certain amount of money or do a certain thing." *See Black's Law Dictionary* 968–69 (5th ed. 1979). Accordingly, as used in the Uniform Act, "obligation" implies a legal duty to comply with a promise to a third party. Furthermore, as significant here, "transfer" refers to property, assets, or money already conveyed from the debtor to a third party, whereas "obligation" refers to property, assets, or money which the debtor is bound, by some legal or contractual duty, to convey to a third party. *See* § 38–8–107, C.R.S. (1994 Cum.Supp.) (Comment 3) ("An obligation may be avoided as fraudulent under this Act if it is incurred under the circumstances specified in [§ 38–8–105(1) ] or [§ 38–8–106(1) ]").

Notably, throughout § 38–8–101, et seq., the term "obligation" occurs in the alternative with the term "transfer." *See, e.g.,* § 38–8–109(1), C.R.S. (1994 Cum.Supp.) ("A transfer or obligation is not voidable under section 38–8–105(1)(a) against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee.").

In contrast, throughout the Uniform Act, the term "obligation," never occurs in the alternative with "claim" or "debt."

■ From the relevant definitions of the terms "transfer" and "obligation" and from their consistent juxtaposition in the statute, we determine that such use of the term "obligation" reflects an intentional effort by the drafters of the Uniform Act to include the assumption by the debtor of a duty to transfer an asset as a fraudulent transfer, even though no actual transfer has as yet taken place. *Cf. Rubin v. Manufacturers Hanover Trust Co.,* 661 F.2d 979, 989 (2d Cir.1981) (fraudulent conveyance provision of

the bankruptcy code recognizes that "the incurring of an obligation chargeable against the debtor's property, as distinguished from the actual grant of an interest in that property, may unfairly deplete the debtor's estate if the debtor does not receive in exchange a consideration roughly equal in value to the obligation incurred").

Thus, the term "obligation," like the term "transfer," must refer to the transaction alleged to have been fraudulently made to diminish the assets available to satisfy creditors.

We also note that, according to § 38–8–105(1)(a), C.R.S. (1994 Cum.Supp.), a "transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Interpreting "obligation" as synonymous with "claim" would render this section of the Uniform Act nonsensical.

Consequently, and contrary to plaintiffs' contention, neither "transfer" nor "obligation" refers to the creditor's claim against the debtor, here Britvar's indebtedness to plaintiffs, but refers instead to the transaction by which the debtor sought to place assets beyond the reach of creditors.

Likewise, because § 38–10–117(2) specifies, in terms of effective date, which fraudulent transfer claims are subject to § 38–8–101, et seq., we must construe "obligation" in the same manner in which it is used in those statutory provisions. Hence, because the transaction to which the statute refers occurred when Britvar conveyed assets to New Age in 1984, prior to the effective date of § 38–8–101, et seq., the statute which applies to plaintiffs' claims is § 38–10–117.

### B.

■ Under § 13–80–109 (the repealed statute applicable here), actions based upon fraud "shall be filed within three years after the discovery by the aggrieved party of the facts constituting such fraud, and not afterwards." Actions based upon fraud included

fraudulent transfer claims brought, as here, under § 38–10–117. *See Greco v. Pullara,* 166 Colo. 465, 444 P.2d 383 (1968).

M & W had a claim for breach of lease in 1984, Sands and Woods incurred attorney fees in 1985, and all plaintiffs had actual notice by 1985 of the conveyances alleged to have been made with the intention to hinder or delay satisfaction of those claims. Based upon these undisputed facts, the trial court concluded that these claims were barred by the statute of limitations because plaintiffs did not file their fraudulent conveyance claim until more than three years after they learned of the actual transfer.

■ Plaintiffs argue, however, that the trial court erred because the statute of limitations on a fraudulent conveyance claim does not begin to run until the creditor's claim is reduced to judgment. We disagree.

Although at one time the common law rule required a general creditor to reduce a claim to judgment before filing a fraudulent conveyance claim, *see, e.g., Fish v. East,* 114 F.2d 177 (10th Cir.1940), that rule has long since been abandoned. *See generally* 1 G. Glenn, *Fraudulent Conveyances* § 33 (Rev. Ed.1940).

■ Thus, although a person must be a creditor, or otherwise have a claim, in order to maintain an action for fraudulent conveyance, the claim need not be liquidated or otherwise reduced to judgment. *See* C.R.C.P. 18(b) (a plaintiff may state a claim for money and a claim to have set aside a conveyance as to him, without first having obtained a judgment establishing the claim for money).

*Greco v. Pullara, supra,* upon which plaintiffs rely, is not to the contrary. In that case, the court held that, until the plaintiff became a judgment creditor, she could not be charged with constructive notice of the transfer. Thus, because she had no actual notice of the transfer prior to that time, the statute of limitations did not begin to run on her fraudulent transfer claim until the underlying claim was reduced to judgment. On the other hand, plaintiffs here had actual notice of the transfers more than three years prior to the filing of their claims.

## C.

In determining that the statute of limitations had run, the trial court found that plaintiffs' claims for attorney fees accrued at the time the request for attorney fees was filed. Plaintiffs contend that, to the contrary, the statute of limitations did not begin to run until the court entered the award of attorney fees because the attorney fees' award was in the nature of costs. They assert that, accordingly, they were not creditors or persons with lawful claims until the trial court entered the award, nor did they suffer an injury prior to the entry of the award. We disagree with both contentions.

Although the trial court correctly determined that plaintiffs' claims were barred by the statute of limitations, we conclude that the attorney fees claims accrued not at the time a request for attorney fees was filed, but at the time attorney fees were first incurred in defense of Britvar's third-party complaint.

### 1.

■ "Creditor," as used in § 38–10–117, includes persons with unlitigated claims against a defendant. *See Thuringer v. Trafton,* 58 Colo. 250, 144 P. 866 (1914) (plaintiff was a "creditor" because he held a tort claim against defendant); *cf. Walk–In Medical Centers, Inc. v. Breuer Capital Corp.,* 778 F.Supp. 1116 (D.Colo.1991) (under Colorado fraudulent conveyance statute, plaintiff was entitled to creditor status from the date of breach of the underlying agreement).

Here, by seeking a money award of attorney fees against Britvar for allegedly filing a claim with no substantial justification, plaintiffs became creditors or persons with lawful claims pursuant to § 38–10–117. That plaintiffs had no right to enforce payment of these monies until the trial court entered the award, in our view, is immaterial.

Certainly, a person holding any disputed, contingent, or unliquidated tort or contract claim has no right to enforce payment of damages until a judgment enters against the defendant. Nonetheless, this does not diminish the claim for payment of damages that the plaintiff asserts when filing a lawsuit.

*Cf.* § 38–8–102, C.R.S. (1994 Cum.Supp.) (A creditor is a "person who has a claim," and a claim "is a right to payment, whether or not the right is reduced to judgment, liquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured or unsecured").

We perceive no conceptual distinction between such claims and a claim for attorney fees awarded as costs which would support classifying a person holding the former as a creditor, or person with a lawful claim, but not the latter. Plaintiffs had claims for attorney fees at the time that the fees were incurred in response to Britvar's frivolous third-party complaint. And, importantly, plaintiffs could have joined their claims for fraudulent conveyance with their claims for attorney fees.

### 2.

■ Relying on *Berger v. Dixon & Snow, P.C.,* 868 P.2d 1149 (Colo.App.1993), plaintiffs argue that even if they were Britvar's creditors, they could not have maintained an action for fraudulent conveyance because their claims did not accrue until they could demonstrate that they had been injured. Plaintiffs contend that they had not suffered any injury until the attorney fees were awarded. We disagree.

In *Berger,* a division of this court held that a claim for fraud regarding payment of a money judgment did not accrue until it was established that an earlier settlement agreement was a binding obligation superseding the judgment. The *Berger* plaintiff could not maintain such an action until it was determined that the settlement agreement was binding and she could then assert that she was injured by the payment of the judgment.

In contrast, to assert a fraudulent conveyance claim, a plaintiff need allege only that he or she is a creditor or has a right to payment of a claim and that a fraudulent conveyance has deprived the defendant of funds which could have been used to satisfy the debt. A plaintiff who is a creditor or a person holding a claim within the meaning of the fraudulent conveyance statute is protected simply by operation of the statute and need not demonstrate any further injury,

such as an unsuccessful effort to collect a debt.

Hence, injury is implicit in the plaintiff's status as a creditor or person asserting a right to payment and in the allegation that the defendant has transferred property to diminish the estate and thereby avoid the claims of creditors. *See Thuringer v. Trafton, supra; New Crawford Valley, Ltd. v. Benedict,* 877 P.2d 1363 (Colo.App.1993); *see also* 1 G. Glenn, *Fraudulent Conveyances* § 199 (Rev.Ed.1940); *cf.* C.R.C.P. 18(b).

Here, plaintiffs suffered the requisite injury when they first incurred attorney fees as a result of the frivolous claim filed against them in 1984. *See Palisades National Bank v. Williams,* 816 P.2d 961 (Colo.App.1991) (uncertainty as to the precise extent of damages does not delay accrual of the claim for statute of limitations purposes). Because, at that time, they also knew of the alleged transfers to avoid the claims of creditors, their claims for fraudulent conveyance had accrued.

## II.

■ Plaintiffs next argue that, even if their claims ordinarily would be barred as untimely, the trial court should have found that the statute of limitations had been tolled because of Britvar's actions in delaying the resolution of the underlying action for breach of lease. We disagree. The trial court did not abuse its discretion by declining to apply the doctrine of equitable tolling.

■ Under certain circumstances, when a party has contributed to the running of the statute of limitations against the opposing party, equity will permit the tolling of the limitation period. *Garrett v. Arrowhead Improvement Ass'n,* 826 P.2d 850 (Colo.1992); *see also Strader v. Beneficial Finance Co. of Aurora,* 191 Colo. 206, 551 P.2d 720 (1976).

Here, although it may well be that Britvar engaged in "groundless litigiousness," plaintiffs have not alleged that she failed to disclose any required information, acted so as to induce or encourage them to allow the statute of limitations to run, or otherwise prevented them from filing a timely claim. *See*

*Samples–Ehrlich v. Simon,* 876 P.2d 108 (Colo.App.1994).

As discussed, plaintiffs knew of the circumstances constituting the alleged fraudulent transfers and, regardless of how protracted the litigation ultimately became, they could have joined that claim with the underlying claims before final judgment was rendered. *See Greco v. Pullara, supra;* § 38–10–117; C.R.C.P. 18(b). Thus, as a matter of law, we perceive no basis upon which to apply the doctrine of equitable tolling. *See Cooper v. First Interstate Bank,* 756 P.2d 1017 (Colo. App.1988).

## III.

■ However, we do agree with plaintiffs that the trial court erred in dismissing their request for a charging order.

Pursuant to § 7–62–703, C.R.S. (1986 Repl. Vol. 3A), an entry of judgment is a prerequisite to a charging order. Defendants do not dispute that plaintiffs are judgment creditors of Britvar. The trial court, however, dismissed the entire complaint.

Because the trial court failed to determine the existence and extent of Britvar's partnership interest in New Age prior to dismissing plaintiffs' request for a charging order, we remand the matter with instructions to reinstate that claim and to conduct the appropriate inquiry.

The judgment is affirmed as to the dismissal of plaintiffs' fraudulent conveyance claim, reversed as to the dismissal of plaintiff's request for a charging order, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

ROTHENBERG and KAPELKE, JJ., concur.