In re Genia Gale DEMIS, Debtor.

Joseph V. WOMACK, Trustee, Plaintiff,

v.

E. Howard EGGEBRECHT, and M. Pauline Eggebrecht, Genia Gale Eggebrecht Demis, Sweetacres # 1, LLC, a Montana Limited Liability Company, and Shiloh Village, LLC, a Montana Limited Liability Company, Defendants.

Bankruptcy No. 94–11784–7.
Adv. No. 95/00056.

United States Bankruptcy Court,
D. Montana.

Feb. 2, 1996.

---

Joseph V. Womack, Trustee, Terry Spear, Billings, Montana, for plaintiff.

George T. Radovich, Billings, Montana, for defendants.

## ORDER

JOHN L. PETERSON, Chief Judge.

In this adversary proceeding, the Chapter 7 Panel Trustee ("Trustee") filed a complaint on July 28, 1995, to avoid transfer of real property as an alleged fraudulent conveyance. The Defendants, Debtor Genia Gale Demis Eggebrecht, E. Howard Eggebrecht, et al., ("Defendants") in the action filed an amended answer July 31, 1995, denying the substantive basis of the complaint, and pleading four affirmative defenses, including an allegation that the Statute of Limitations on the Trustee's avoidance powers bars this action. All parties acknowledge the Court has jurisdiction in the matter under 28 U.S.C. § 1334 and this is a core proceedings under 28 U.S.C. § 157(b)(2)(H).

After due notice hearing was held on December 14, 1995, in which the parties appeared represented by counsel. The Trustee offered the testimony of three witnesses, Debtor Genia Gale Demis ("Debtor"), Pauline Eggebrecht and Debra Demis, and Debtor testified for the Defendants. The parties also mutually submitted exhibits 1–20, 22–29 and 30 into evidence as well as Exhibits A and B.

The Trustee contends, *inter alia*, the two year state law statute of limitations for avoidance of fraudulent conveyances does not bar this action since, although the Debtor executed two quit-claim deeds to the same real property in the case in 1991 and 1992, the only valid transfer took place within two years before the filing of bankruptcy or other actions by creditors. The Trustee claims the earlier of the two quit-claim deeds is either "inoperable" or void because at the time of its execution, a Colorado court had temporarily enjoined Debtor from conveying any property in a divorce action, and therefore the earlier purported conveyance could not begin the limitations clock running. In the alternative, the Trustee also argues the statute of limitations for a fraudulent conveyance does not begin to run until a judgment giving rise to a debt was entered for creditor.

Defendants admit in their amended answer the Colorado divorce court issued a restraining order against Debtor and the injunction was in effect at the time Debtor executed the first quit-claim deed. Nevertheless, Defendants argue the Debtor's transfer, although in violation of the injunction, does not void or otherwise impair the properly executed, recorded and perfected quit-claim deed from Debtor to the Eggebrechts of real property in the jurisdiction of Montana. Defendants conclude the earlier transfer having occurred more than two years prior to Debtor's filing for bankruptcy, the Trustee may not now avoid it. The issue of the statute of limitations being dispositive, the Court finds for the Defendants.

## I.

In portions of the "Parties Agreed Statement of Facts" filed December 12, 1995, the litigants formally specified in writing to the following relevant facts.

1. Debra Kay Demis, ("Debra"), a resident of Colorado, is a creditor of the Debtor in this case. (Parties Agreed Statement of Facts, p. 2.)

2. In 1987, Debra and Debtor entered into a contract retaining a lawyer to represent them both in a suit to determine their interest in certain real property in Roosevelt and Yellowstone Counties, Montana, owned among Debtor, Defendants Eggebrecht, the Estate of Mark K. Eggebrecht, David Kent Eggebrecht and Debra as a joint venture. Debra and Debtor each agreed to pay half of the fees and costs incurred, but as to the obligation to the lawyer's firm, both were jointly and severally liable. In accord with the contract, the lawyer appeared on behalf of Debra and Debtor in DV 87–1061, Thirteenth Judicial District, Yellowstone County,

Montana, *Demis v. Eggebrecht* (hereafter "the 1987 *Demis v. Eggebrecht* action"). (Parties Agreed Statement of Facts, p. 5.)

3. Subsequently, Debtor failed to pay fees and costs due the lawyer, including accountant's fees for the accountant obtained as an expert witness, and, during the pendency of the 1987 *Demis v. Eggebrecht* action, directed the lawyer to withdraw the firm as Debtor's counsel. Thereafter Debtor acted pro se in the lawsuit. (Parties Agreed Statement of Facts, p. 6.)

4. On October 24, 1989, in a Colorado divorce proceeding running parallel with the 1987 *Demis v. Eggebrecht* action, Debtor and Peter Demis, Debtor's spouse, entered into a "Stipulated Agreement re: Temporary Restraining Order and Injunction" that provided Debtor "shall not, without an Order of Court or written agreement of the parties, dismiss, liquidate, transfer or assign her cause of action or property rights associated with" the 1987 *Demis v. Eggebrecht* action. The Colorado court entered an Order dated November 16, 1989, in the Demis divorce action approving the stipulated agreement. (Parties Agreed Statement of Facts, p. 6.)

5. By Judgment dated November 6, 1991, and docketed November 6, 1991, in the 1987 *Demis v. Eggebrecht* action, the court determined that Debra had an undivided one-fourth interest in certain of the properties at issue and an undivided one-sixth interest in other of the subject properties. Debra's net equitable share in the properties was determined to be $279,238.00. (Parties Agreed Statement of Facts, pp. 6–7.)

6. Debtor executed a quit-claim deed dated December 17, 1991, transferring her interests in the real property located in Yellowstone County, Montana, subject to the 1987 *Demis v. Eggebrecht* decision. The deed was recorded with the Yellowstone County Clerk and Recorder on December 17, 1991. (Parties Agreed Statement of Facts, p. 7.; Plaintiff's Exhibit 3.) Debtor executed a second quit-claim deed on the property providing the same legal description in a slightly different format on June 11, 1992. (Parties Agreed Statement of Facts, p. 8; Plaintiff's Exhibit 4.)

7. The December 17, 1991, deed contained the following language describing the real property transferred from Debtor to the Eggebrechts.

1. Lot 3, except the West 20 feet, Block 12, of Sweet Acres Subdivision, 6th Filing, in the City of Billings, Yellowstone County, according to the official plat on file in the office of the Clerk and Recorder of said County, under Document No. 788630; and the building located thereon; and

2. Lot 4, Block 12, of Sweet Acres Subdivision, 6th Filing, in the City of Billings, Yellowstone County, Montana, according to the official plat on file in the office of the Clerk and Recorder of said County, under Document No. 788630; and

3. The North 136.125 feet of the South 544.5 feet of Lot 21, of Arnold Subdivision, Second Filing, in the City of Billings, Yellowstone County, Montana, according to the official plat on file in the office of the Clerk and Recorder of said County, under Document No. 413840, EXCEPT the Westerly 10 feet thereof condemned by the City of Billings, Yellowstone County, Montana, for street and highway purposes by virtue of Judgment and Final Order of Condemnation, Civil Case No. 83083, Yellowstone County, Montana, a certified copy of which was recorded June 2, 1978, in Book 1194, Page 4998, under Document No. 1091692, records of Yellowstone County, Montana; and

4. *Phases I and II:*

Tract 2, Amended Certificate of Survey 1492, filed under Document No. 1054076, records of Yellowstone County, Montana;

Subject to that certain Mortgage dated November 24, 1975, with E. Howard Eggebrecht, a/k/a Eugene Howard Eggebrecht, a/k/a Howard Eggebrecht and M. Pauline Eggebrecht, a/k/a Pauline Eggebrecht, husband and wife, Genia Gale Eggebrecht, a single woman, and Debra Kay Eggebrecht, a single woman, as Mortgagors, and Valley Credit Union, as Mortgagee, recorded December 9, 1975, in Book 1085, Page 673, under

Document No. 1004945, records of Yellowstone County, Montana, which Mortgage is modified by Loan Modification Agreement dated February 11, 1987, recorded February 27, 1987, in Book 1303, Page 4534, under Document No. 1431052, records of Yellowstone County, Montana; and

Subject to that certain Mortgage dated October 27, 1977, with E. Howard Eggebrecht, a/k/a Eugene Howard Eggebrecht, a/k/a Howard Eggebrecht and M. Pauline Eggebrecht, a/k/a Pauline Eggebrecht, husband and wife, and Debra Kay Eggebrecht, a single woman, and Genia Gale Demis, f/k/a Genia Gale Eggebrecht and Peter P. Demis, wife and husband, as Mortgagors, and Valley Credit Union, as Mortgagee, recorded October 28, 1977, in Book 1175, Page 1010, under Document No. 1068748, records of Yellowstone County, Montana, which mortgage is modified by Loan Modification Agreement dated February 11, 1987, recorded February 27, 1987, in Book 1303, Page 4534, under Document No. 1431051, records of Yellowstone county, Montana; and

5. *Phase III:*

Tract 1–A, 2nd Amended Certificate of Survey 1492, filed under Document No. 1195958, records of Yellowstone County, Montana; and

6. *Phase IV:*

Beginning at a point which is the southwest corner of Tract 1–B of the 2nd Amended Certificate of Survey No. 1492 situated in the W. ½ N.W. ¼ Sec. 11, T. 1 S, R. 25 E., P.M.M., Yellowstone County, Montana; thence from said true point of beginning along the easterly right-of-way line of Shiloh Road North 00 Degrees 05 Minutes 39 Seconds West a distance of 471.45 feet; thence North 89 Degrees 41 Minutes 55 Seconds East a distance of 1257.87 feet to a point on the north-south ¹⁄₁₆th line of said Section 11; thence along said ¹⁄₁₆th line South 00 Degrees 07 Minutes 18 Seconds East a distance of 471.45 feet to the southeast corner of said Tract 1–B of the 2nd Amended Certificate of Survey No. 1492; thence along the south line of said Tract 1–B South 89 Degrees 41 Minutes 55 Seconds West a distance of 1258.10 feet to the point of beginning, containing 13.6151 acres, which is part of Tract 1–B–1B Amended Tract 1–B–1 of Certificate of Survey 1492.

Subject to that certain Agreement dated January 1, 9184, by and between Earl T. Gilbert and Virginia Gilbert, husband and wife, and E. Howard Eggebrecht and M. Pauline Eggebrecht, husband and wife.

The above described property is hereafter referred to as the "Real Property." [1] (Parties Agreed Statement of Facts, pp. 3–4; Plaintiff's Exhibit 3.)

8. Debra received payment from Defendants Eggebrecht in satisfaction of the judgment in the 1987 *Demis v. Eggebrecht* action. On or about December 19, 1991, Debra delivered to Defendants Eggebrecht and Debtor quit-claim deeds of Debra's interests in the Real Property, in favor of the Eggebrechts, Debtor, David Kent Eggebrecht and the Estate of Mark Kevin Eggebrecht. At the same time, Debra also delivered a copy of a release and assignment of attorney's claim (filed that same date in DV 87–1061) by which Hendrickson, Everson & Noennig, P.C., acknowledged payment in full of fees and costs by Debra and Assignment to Debra of the firm's rights against Debtor under the attorney contract. Finally, Debra delivered to Defendants Eggebrecht and Debtor with the quit-claim deeds and the copy of the release and assignment of attorney's claim a letter expressly giving notice of Debra's in-

---

1. The Parties Agreed Statement of Facts referred to a parcel described as E1/2S1/4, Sec. 8, T.27 N., R. 48 E., M.P.M., Roosevelt County, as part of the "Real Property," as did the Final Pretrial Order, but the quit-claim deeds in the record before the Court did not include this property. (Plaintiff's Exhibit 3; Plaintiff's Exhibit 4.) Although Debtor's 1991 tax return (Plaintiff's Exhibit 5), lists this parcel as part of the gift transfer in question, no deeds in the record refer to the Roosevelt County parcel and the Court therefore cannot determine who currently owns the land, when it may have been transferred, and between whom the transaction may have taken place.

tent to bring suit against Debtor for Debtor's share of the fees and costs incurred in the litigation, and further notice that any transfer of the interest of Debtor in the real property involved in the litigation in derogation or diminishment of Debra's claims would be challenged as a fraudulent transfer. (Parties Agreed Statement of Facts, p. 7.)

9. Debra commenced an action in Colorado, being *Demis v. Demis,* District Court Arapahoe County, Colorado, Case No. 03–CV 1480, upon which she recovered judgment against Debtor for the fees and costs owed by Debtor in prosecution of the 1987 *Demis v. Eggebrecht* action, including the accountant's fees, on August 29, 1994, in the amount of $44,571.98, with interest accruing thereupon at 8% per annum until satisfied in full. (Parties Agreed Statement of Facts, p. 9.)

In addition to the foregoing agreed facts, the Court makes the following findings of fact from review of the record; to wit:

1. At the time of the transfer by quit-claim executed on December 17, 1991, the Colorado restraining order prohibiting Debtor from alienating the Real Property was in full effect. (See Plaintiff's Exhibit 8.)

2. Finally, while the Eggebrechts did not give value in return for the transfer of the Real Property from Debtor, the Court finds no evidence in the record to indicate the Eggebrechts, the transferees in the Debtor's quit-claim deeds, had any knowledge of the Colorado restraining order at the time Debtor delivered the deed, and owing to Debtor's former spouse's substantial wealth, they had no reasonable cause to believe Debtor was insolvent.

## II.

### A. Statute of Limitations.

■ This avoidance action was brought under 11 U.S.C. § 544(b)[2] giving a bankruptcy trustee the right to avoid transfers voidable by unsecured creditors under state law.

Thus Montana law determines the limitation period barring nullification of the purportedly fraudulent conveyance at bar. *Wyle v. C.H. Rider & Family (In re United Energy Corp.),* 944 F.2d 589, 593 (9th Cir.1991) (applying section 544(b) to avoid fraudulent transfers under state law). The applicable law in this instance is Montana's version of the Uniform Fraudulent Transfer Act ("UFTA"), codified at Mont.Code Ann. §§ 31–2–327 through 31–2–342 (1991). The Trustee's complaint alleges Debtor transferred property to the Eggebrechts in an effort to "hinder, delay, or defraud" a creditor, specifically Debra Demis, and that Debtor made the transfer without receiving in exchange a reasonably equivalent value for the property at a time Debtor reasonably should have believed that Debtor would incur debts in two Colorado lawsuits beyond Debtors ability to pay as they became due.

■ For fraudulent conveyance actions, courts must apply the statute in effect at the time of the transfer, not the statute in effect at the time the underlying claim arose. *Sands v. New Age Family Partnership, Ltd.,* 897 P.2d 917, 920 (Colo.App.1995). The earliest transfer alleged in this action purportedly occurred on December 17, 1991. Montana enacted the Uniform Fraudulent Transfer Act ("UFTA" or "the Act") on April 4, 1991, and the statute went into effect October 1, 1991. 1991 Mont.Laws Ch. 324; Mont.Code Ann. § 1–2–201. Therefore the Court must adjudicate the Trustee's complaint under the UFTA.

■ The first claim pertains to UFTA sub-part 333(1)(a), while the latter claim addresses UFTA sub-part 333(1)(b). Mont. Code Ann. § 31–2–333(1) provides:

**Transfers fraudulent as to present and future creditors.**

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before

---

2. 11 U.S.C. § 544 provides:

**Trustee as lien creditor and as successor to certain creditors and purchasers**

\* \* \* \* \* \*

(b) The trustee may avoid any transfer of an interest of the debtor in property or any obli-

gation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

    (a) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

    (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor:

      (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

      (ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due. . . .

The Debtor, however, asserts the two year statute of limitations has expired on this claim, having begun running no later than December 17, 1991. The burden of proof on an affirmative defense such as the statute of limitations rests with the party asserting the defense. F.R.B.P. Rule 7008; F.R.Civ.P. 8(c); *E.F. Matelich Construction Co., Inc. v. Goodfellow Brothers, Inc.,* 217 Mont. 29, 32, 702 P.2d 967, 969 (Mont.1985).

■ Interpreting the Montana's version of the Uniform Fraudulent Conveyance Act ("UFCA"), as opposed to the UFTA, formerly codified at Mont.Code Ann. §§ 31–2–301 through 31–2–325 (1989), and the relevant statute of limitations thereto, Mont.Code Ann. § 27–2–203 (1989),[3] the Montana Supreme Court has held that "where an alleged fraudulent transfer occurs prior to the time that a judgment is obtained against the transferor, a cause of action does not accrue, and the statutory [limitations] period does not begin to run, until the judgment is obtained." *Murphy v. Atkinson,* 262 Mont. 164, 168–169, 864 P.2d 273, 276 (Mont.1993). Subsequent to that decision, however, in 1991, the Montana legislature repealed the UFCA and enacted the UFTA, replacing both the substantive terms of the act, and the relevant statute of limitations. 1991 Mont.

Laws Ch. 324 §§ 10–11. Thus, neither the *Murphy* holding nor § 27–2–203 apply to actions under the recently enacted UFTA.

Despite the displacement of the UFCA by the UFTA, the holding of *Murphy,* 864 P.2d 273, would seem to bind the Court in the instant case, and require a finding that the statute of limitations did not begin on the Trustee's fraudulent conveyance action until August 29, 1994, when Debra's claims against Debtor were reduced to a judgment. (See Paragraph 9, Part I, *supra.*) In *Murphy,* eventual judgment creditors (the Murphys) lodged counterclaims that resulted in the judgment against the debtor (Lewis) after the challenged conveyance occurred. Upon entry of the judgment, the Murphys brought a fraudulent conveyance action under the UFCA.

In deciding *Murphy,* the Montana Supreme Court reasoned that under the facts of the case, allowing the limitations period to run from the date of the transfer would have the effect of requiring the judgment creditors to file a fraudulent transfer action before "they had a right to do so." *Id.* In such anomalous circumstances, the statute of limitations under Mont.Code Ann. § 27–2–203 began to run only upon the entry of judgment. *Id.* Noting the unique nature of the facts, the court "made clear that under circumstances such as this, where an alleged fraudulent transfer occurs prior to the time that a judgment is obtained against the transferor, a cause of action does not accrue, and the statutory period does not begin to run, until the judgment is obtained." *Id.* (citing *Finch v. Kent,* 24 Mont. 268, 279, 61 P. 653, 658 (Mont.1900)).

*Murphy,* however, does not control for two reasons. First, its facts are clearly distinguishable from the case at bar, and second, as has already been shown, the legislature has since wholly displaced the applicable statute of limitations. According to the stipulated facts *sub judice,* Debtor refused to pay any attorney's or accountant's fees when

---

**3.** Montana Code Ann. § 27–2–203 (1989) provides:

  **Actions for relief on ground of fraud or mistake.** The period prescribed for the commencement of an action for relief on the ground of

fraud or mistake is within 2 years, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake.

due sometime before November 6, 1991, after which the court entered judgment in the 1987 *Demis v. Eggebrecht* action. (See Parties Agreed Statement of Facts, p. 6.) Because the contract between Debra and Debtor provided for joint and several liability, Debra had a claim as defined by the UFTA the moment Debtor defaulted on the 1987 agreement to pay attorneys fees arising from the 1987 *Demis v. Eggebrecht* action. Mont. Code Ann. § 31–2–328(3) (1991).[4] Thus, either on recording of the December 17, 1991, quit-claim deed, or at the time of the later transfer, Debra had under the UFTA both a claim against Debtor and a cause of action for fraudulent transfer. Mont.Code Ann. § 31–2–333 (1991); *Prescott v. Baker*, 644 So.2d 877, 879–880 (Ala.1994) (remedies under Alabama Uniform Fraudulent Transfer Act, to which the Statute of Limitations of the Act applied, available even though creditor's claim not reduced to judgment). Therefore, unlike the claimants in *Murphy,* Debra had a right to sue for fraudulent transfer at the time of either of the conveyances alleged to be fraudulent in this case, and did not have to wait until a court reduced the underlying claim to a judgment to bring such action.

When, by legislative act, the UFTA displaced the statute of limitations applicable to the UFCA in *Murphy,* 1991 Mont.Laws Ch. 324 § 11,[5] the relevant statute of limitations for fraudulent conveyance actions under the UFTA became Mont.Code Ann. § 31–2–341 (1991).[6] The UFTA extinguishes claims under sub-parts 333(1)(a) and (b) not pressed "within 2 years after the transfer was made." Section 31–2–341(1) also contains a provision which allows an extension of the limitations period to "within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant." Thus, while the statute of limitations in *Murphy* contained no such specific statutory mandate to instruct on when the limitations period began to run, the current UFTA specifically prescribes that the limitations period under the Act begins to run at the time of the challenged transfer, not upon entry of judgment on an underlying claim.

■ Interpreting the UFTA, the plain meaning of its terms controls. *Gulbrandson v. Carey,* 272 Mont. 494, 901 P.2d 573, 577 (Mont.1995). Finding the language of § 32–2–341 plain, clear and unambiguous, the Court must hold that under the UFTA, a creditor like Debra in the case at bar must lodge a fraudulent conveyance action within two years of the challenged transfer, "or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant." *McMaster v. Farmer,* 76 Wash.App. 464, 886 P.2d 240, 241–242 (Wash.App.1994).

## B. Validity of the transfer.

■ Courts have inherent power to void acts done in violation of injunctions. *All Minerals Corp. v. Kunkle,* 105 Nev. 835, 784 P.2d 2, 4 (Nev.1989). Nevertheless, courts so holding have limited those powers. Specifically, courts have refused to define acts done in violation of an injunction as mere nullities or void. Rather, only a party obtaining an injunction may challenge violations of the injunction "when that party attacks the action in a proper manner," and then only for remedies against the transgressing

---

4. Mont.Code Ann. § 31–2–328(3) reads:
   "Claim" means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed contingent, matured, unmatured, legal, equitable, secured or unsecured.

5. Section 11 provides:
   **Supplementary provisions.** Unless displaced by the provision of [sections 1 through 11], the principles of law and equity, including the law merchant and the law relating to principal and agent, estoppel, laches, fraud misrepresentation, duress, coercion, mistake, insolvency, or other validating or invalidating cause, supplement its provisions.

6. Mont.Code Ann. § 31–2–341 (1991) provides in pertinent part:
   **Extinguishment of cause of action.**
   A cause of action with respect to a fraudulent transfer or obligation under this part is extinguished unless action is brought under:
   (1) 31–2–333(1)(a) within 2 years after the transfer was made or the obligation was incurred or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant;
   (2) 31–2–333(1)(b) or 31–2–334(1) within 2 years after the transfer was made or the obligation was incurred; . . .

party—not against the act itself—such as an order directing the violator to rectify the enjoined act, or an order holding the party malefactor in contempt of court. *Id.* (citing *Candler v. Wallace Candler, Inc.,* 365 Mich. 613, 113 N.W.2d 901 (Mich.1962) (holding conveyance made in violation of injunction is not void or inoperative as to anyone except those for whose benefit court granted injunction) and *Town of Fond du Lac v. City of Fond du Lac,* 22 Wis.2d 525, 126 N.W.2d 206 (Wis.1964) (stating act in contempt of court's order not invalid because injunction has no in rem effect)). *See also, Pioneer Annuity Life Ins. Co. v. National Equity Life Ins. Co.,* 159 Ariz. 148, 765 P.2d 550, 558 (Ariz.Ct.App. 1988) ("Generally, the remedy [for violation of an injunction] is confined to contempt, not invalidation of the transaction.").

■ Courts have so refused to nullify acts done in violation of an injunction because an injunction is in personam, not in rem. *Kunkle,* 784 P.2d at 4. "In other words, the court may punish the party that violates the injunction with a fine or imprisonment but may not alter property rights resulting from the violation." *Id. See, e.g., Candler,* 113 N.W.2d at 903–904; *Gallaway v. Smith,* 70 Ariz. 364, 220 P.2d 857 (Ariz.1950) (foreclosure was not void or voidable by third party notwithstanding that a restraining order in a divorce action had prohibited the previous owner from disposing of such property at the time of the foreclosure); *Lonergan v. Strom,* 145 Ariz. 195, 700 P.2d 893 (Ariz.Ct.App.1985) (holding a domestic relations Court injunction in effect at the time of the execution and recording of the deeds in question does not make the proscribed conveyances invalid automatically). *Contra, Bearden v. Knight,* 224 S.W.2d 273, 275 (Tex. Civ.App.1949) (enjoined transfer made to party with notice of injunction passes no title).

Courts have followed a similar line of reasoning in holding that, although a divorce court may enjoin the transfer of out-of-state property by parties over which the court has jurisdiction in personam, and cite disobedient parties for contempt if they violate the in-

junction, such courts have no jurisdiction over the title to land in another state. *Larrabee v. Larrabee,* 31 Colo.App. 493, 504 P.2d 358, 360 (Colo.App.1972) (citing *Fall v. Eastin,* 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65 (1909)). Indeed, Colorado recognizes "that a divorce court in one state does not have the power directly to affect, by means of its decree, the title to real property situated in another state." *Id.*

■ Thus, even if a divorce court enjoins the transfer of real property by the parties to a divorce, if one of the parties violates the injunction by conveying property held out-of-state, the validity of the transfer is unaffected.[7] Again, although the issuing court may hold the transgressing party in contempt, *see Pioneer Annuity Life,* 765 P.2d at 558, order the party to reconvey the land and even jail the party to enforce compliance, *see Phillips v. Phillips,* 224 Ark. 225, 272 S.W.2d 433 (Ark.1954), neither the injunction itself, nor a subsequent decree purportedly voiding transfers in violation of the injunction, has any effect whatsoever on title to out-of-state real property. *Gammon v. Gammon,* 210 Mont. 463, 684 P.2d 1081, 1085 (Mont.1984.) ("Insofar as the [foreign] court attempted to directly transfer title to Montana real property, its attempt was void for want of jurisdiction," citing *Fall v. Eastin, supra* ). What is more, only a party to an injunction may seek relief for violation of the injunction. *Kunkle,* 784 P.2d at 4; *Candler,* 113 N.W.2d at 903–904. That excludes the Plaintiff in this case.

### III.

■ Applying the foregoing analysis to the transfer in question at bar, the evidence shows and the parties have agreed that Debtor executed a quit-claim deed to the Eggebrechts on December 17, 1991, and that the deed was recorded the same day. (*See* Plaintiff's Exhibit 8.) The Trustee argues that because of an injunction issued by a Colorado divorce court in effect at the time prohibiting transfer of property by Debtor, the deed is void. The Court, however, dis-

---

7. Even were the Court to follow the rule in *Bearden,* 224 S.W.2d at 275, a Colorado divorce

decree could still not effect title to real property in Montana.

agrees. Under the general rule that injunctions do not automatically void actions taken in their violation, *Kunkle,* 784 P.2d at 4, and the Colorado and Montana rules that a divorce court cannot by its order effect title to real property in a foreign jurisdiction, *Larrabee, supra, Gammon, supra,* the Colorado injunction against Debtor, and the subsequent Colorado decree deeming the quitclaim deed "frivolous and groundless" has no effect whatsoever on the transfer of real property conveyed and recorded in Montana. In any event, neither Debra nor the Trustee were parties to the original injunction, and neither therefore may obtain relief for its violation. *Kunkle,* 784 P.2d at 4. Thus, the date of the allegedly fraudulent transfer *sub judice* was December 17, 1991.

■ Accordingly, the statute of limitations for challenging the Debtor's allegedly fraudulent conveyance under the UFTA expired two years after the transfer, on December 18, 1993. Mont.Code Ann. § 31–2–341(1) and (2). The Trustee filed the instant adversary complaint June, 28, 1995. Thus the Trustee's claims are barred, unless they have been asserted within one year after the time when Debra could reasonably have first discovered the transfer. Mont.Code Ann. § 31–2–341(1).

The Court notes, regarding the recording on December 17, 1991, of the first quit-claim deed from Debtor to the Eggebrechts, "the recording statutes import notice to all interested parties in matters affecting title to real property." *Hauseman v. Koski,* 259 Mont. 498, 502, 857 P.2d 715, 717 (Mont.1993). As a creditor with a colorable fraudulent conveyance action against Debtor, Debra was an interested party to the transfer. Thus Montana law charges Debra with notice of the challenged transfer at bar fully two and one-half years prior to the filing of the Trustee's complaint.

In addition, the parties agree that Debra threatened Debtor with a fraudulent transfer action "on or about December 19, 1991." The Court infers from this reference that at the time, Debra expected Debtor to attempt to fraudulently transfer the real property in question. Further, Debra obviously contemplated asserting such a claim when making the threat. Anticipating such a move by Debtor, Debra should reasonably have checked with the recording office to determine ownership of the parcels. Debtor had already made the transfer, which a simple and brief inspection of the records would have shown. Thus, given Debra's suspicions, the Court concludes that Debra could reasonably have been expected to discover the conveyance in question at the time Debra sent the letter threatening legal action. Under this finding, Mont.Code Ann. § 31–2–341(1) does not extend the two year limitations period one day.

Furthermore, even should the Court find that Debra could only have reasonably learned of the transfer as late as one year from that date of Debra's threat, the limitations period would still have expired 18 months prior the Trustee's filing of the instant adversary complaint. Furthermore, in light of Debra's constructive notice of the transfer as of December 17, 1991, there is certainly no basis in the record for a finding that Debra could reasonably have learned of the transfer a year before the filing of the instant action, or over two and one-half years after threatening a fraudulent transfer action against a conveyance that had been recorded at the time Debra made the original threat. Thus, under either Mont.Code Ann. § 31–2–341(1) or § 31–2–341(2), the statute of limitations bars the fraudulent conveyance claims asserted by the Trustee.

## CONCLUSION

The UFTA statute of limitations for the claims asserted by the Trustee under Mont. Code Ann. § 31–2–331 expired two years after the date the Debtor transferred the real property in question to the Eggebrechts, or within one year of when Debra could have discovered the conveyance. Debtor transferred the property to the Eggebrechts on December 17, 1991. Debtor did violate a Colorado state court injunction by so conveying the property, and may have been in contempt of that court by so doing, but the transfer is nevertheless valid. Consequently, the two year statute of limitations on Debra's fraudulent conveyance claims expired December 18, 1993.

Moreover, Debra had constructive notice of the first transfer as of December 17, 1991. Debra also could reasonably have discovered the allegedly fraudulent transfer Debra suspected would occur when Debra made the threat to sue Debtor on December 19, 1991, or at the latest within one year of making the threat. Thus, Debra and therefore the Trustee enjoy no extension of the limitations period under Mont.Code Ann. § 31–2–341(1). Therefore, the UFTA statute of limitations bars the fraudulent conveyance claims asserted by the Trustee in the instant adversary proceeding.

IT IS ORDERED a separate Judgment on the merits shall be entered in favor of the Defendants, dismissing all counts of the Complaint.