763 N.W.2d 696 (2009)
277 Neb. 531
Francisco DOMINGUEZ, appellee,
v.
EPPLEY TRANSPORTATION SERVICES, INC., a Nebraska corporation, et al., appellants.
No. S-08-408.
Supreme Court of Nebraska.
April 3, 2009.
*698 David A. Domina and Linda S. Christensen, of Domina Law Group, P.C., L.L.O., Omaha, for appellants.
W. Patrick Betterman, of Law Offices of W. Patrick Betterman, Omaha, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
HEAVICAN, C.J.

I. INTRODUCTION
Eppley Transportation Services, Inc. (ETSI), and Michael J. Abbott and Andi Abbott appeal the decision of the Douglas *699 County District Court granting summary judgment to Francisco Dominguez. Dominguez had obtained a judgment in the U.S. District Court for the District of Nebraska against Abbott Transportation, Inc. (ATI), for employment discrimination. ATI subsequently transferred all of its assets to ETSI, a new corporation, and Dominguez sought to enforce his judgment against ETSI based on the doctrines of successor liability and fraudulent conveyance, as well as the equitable principle of piercing the corporate veil.
The district court granted summary judgment on the issue of corporate successor liability and found that a conveyance made from ATI to the Abbotts was fraudulent. ETSI and the Abbotts contend the district court erred in granting summary judgment on the issue of the fraudulent conveyance, but conceded the issue of successor liability at oral arguments. Dominguez claims this court lacks jurisdiction to hear the appeal, because ETSI and the Abbotts filed their appeal from a nonexistent final order. We find this court does have jurisdiction over the appeal, and we affirm the decision of the district court.

II. BACKGROUND
Dominguez worked for ATI prior to 2003. ATI was incorporated in Nebraska in 1999 by the Abbotts (then known as Michael J. Schmid and Zorica Schmid), the sole shareholders and directors. The Abbotts also own Abbott Parking, Inc. (API), which owned a parking lot near Eppley Airfield in Omaha, Nebraska. ATI was formed to transport travelers between the parking lot and the airport. The Abbotts were the only officers, directors, and shareholders of ATI and API at all relevant times.
Dominguez filed a complaint in federal district court against ATI for a "national origin" discrimination claim on December 23, 2003. After the complaint was filed, ATI issued a promissory note on August 20, 2004, in the amount of $647,071.61, payable to the Abbotts, to memorialize the outstanding loans the Abbotts had made to ATI over the course of ATI's existence.
On December 31, 2004, the Abbotts held a special meeting of the board of directors and shareholders to determine how to dispense of a debt of $119,038.59 owed to ATI by API. Acting in their official capacities, the Abbotts transferred the $119,039.59 receivable to themselves from API, to be offset against the debt owed to them by ATI (the December 2004 transfer). ATI then issued a new promissory note to the Abbotts in the amount of $544,538.32. The Abbotts followed corporate formalities during their meeting, including memorializing the minutes and filing corporate documents.
On May 27, 2005, after a jury trial, Dominguez obtained a judgment against ATI in federal district court for $79,479.22 plus interest, attorney fees, and costs. On August 11, the federal district court ruled that ATI would be entitled to a new trial if Dominguez did not agree to a remitted damages amount, because there was insufficient evidence to support the amount of lost wages awarded by the jury. The same day, ATI transferred all its assets to ETSI. The list of assets included five vehicles, a camera, and a printer. The transfer was made in consideration of ETSI's assumption of the lien notes on three of the vehicles and two loans.
The bill of sale is dated August 11, 2005, but ETSI's articles of incorporation were not filed until a week later. As with ATI and API, the Abbotts were the only shareholders, officers, and directors of ETSI. Although ATI ceased to do business in August 2005, ETSI used the same vehicles to perform the same service of shuttling passengers between the parking lot and *700 the airport, and ETSI employed essentially the same personnel. API continued to operate as usual.
Shortly thereafter, Dominguez accepted the remitted damages and the U.S. District Court entered an amended judgment in favor of Dominguez in the amount of $83,088.56, plus interest from and after May 31, 2005. Dominguez has been unable to collect any part of the judgment.
On October 19, 2006, Dominguez filed a complaint in Douglas County District Court against ETSI and the Abbotts, alleging they were liable for the judgment entered against ATI. Dominguez later moved for summary judgment on all counts. On March 14, 2008, the district court granted Dominguez' motion for summary judgment on the claims of successor liability and fraudulent conveyance, but not on the issue of piercing the corporate veil.
On April 4, 2008, Dominguez moved to dismiss against ETSI and the Abbotts the remaining claim of piercing the corporate veil, which was not disposed of on summary judgment, and requested a final judgment. The district court granted the motion and entered a final order 7 days later. ETSI and the Abbotts filed a notice of appeal on April 14, citing a nonexistent March 17, 2008, order.

III. ASSIGNMENT OF ERROR
After conceding the issue of corporate successor liability during oral arguments, ETSI and the Abbotts assign as error that the district court erred when it entered summary judgment on Dominguez' fraudulent conveyance claim.

IV. STANDARD OF REVIEW
[1] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.[1]
[2] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[2]
[3, 4] In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[3] When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling.[4]
[5] Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the trial court.[5]

V. ANALYSIS

1. WHETHER THIS COURT HAS JURISDICTION TO HEAR CASE
[6] We first address the issue of whether this court has jurisdiction. Dominguez has alleged this court does not have *701 jurisdiction, because ETSI and the Abbotts entered their notice of appeal based on "the final Order entered by the District Court of Douglas County, Nebraska, on March 17, 2008[sic] when the District Court sustained the Plaintiff's Motion for Summary Judgment." Summary judgment was granted on March 14, 2008, and the final order was entered on April 11. ETSI and the Abbotts contend they are not required to identify the order from which they appeal within the notice of appeal.
Neb.Rev.Stat. § 25-1912 (Reissue 2008) governs the filing of an appeal. Section 25-1912(1) states:
The proceedings to obtain a reversal, vacation, or modification of judgments and decrees rendered or final orders made by the district court ... shall be by filing in the office of the clerk of the district court in which such judgment, decree, or final order was rendered, within thirty days after the entry of such judgment, decree, or final order, a notice of intention to prosecute such appeal signed by the appellant or appellants or his, her, or their attorney of record....
Section 25-1912(2) states that if a notice of appeal or docket fee is filed "after the announcement of a decision or final order but before the entry of the judgment, decree, or final order," it shall be treated as filed or deposited after the entry of the final judgment.
[7] We have previously held that a notice of appeal filed before a final order has been entered has no effect.[6] That is not the case here, however, because the notice of appeal was filed on April 14, 2008, after the entry of the final order on April 11. Section 25-1912 does not require that the final order be explicitly identified. Furthermore, § 25-1912(2) states that a notice of appeal filed after a final order is announced but before entry of judgment will be considered to have been filed after the entry of judgment. In this case, the notice of appeal was filed within 30 days after entry of the final order. Although the best practice would be to identify the correct final order of judgment in the notice of appeal, the notice did comply with all explicit statutory requirements. We therefore find that this court has jurisdiction to decide the case.

2. TRANSFER WAS FRAUDULENT
We next turn to ETSI and the Abbotts' sole remaining claim. ETSI and the Abbotts allege the district court erred in awarding summary judgment on Dominguez' fraudulent conveyance claim. Dominguez alleged that the December 2004 transfer made from ATI to the Abbotts, repaying $119,039.59 of debt, was a fraudulent conveyance under Nebraska's Uniform Fraudulent Transfer Act (UFTA), Neb.Rev.Stat. §§ 36-701 to 36-712 (Reissue 2008). The district court found the conveyance was fraudulent as a matter of law under § 36-706(b). Judgment was entered against the Abbotts personally under § 36-709(b)(1), because they were "the first transferee[s] of the asset or the person[s] for whose benefit the transfer was made."
Section 36-706(b) states:
A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider knew or reasonably should have known that the debtor was insolvent.
*702 There is no question that the Abbotts were insiders, that ATI was insolvent, and that the Abbotts knew or reasonably should have known that ATI was insolvent; however, the Abbotts claim that the December 2004 transfer had no value and that Dominguez was not a present creditor, and that for those reasons, Dominguez did not have a claim at the time of the December 2004 transfer.

(a) Transfers for Value
[8] ETSI and the Abbotts first claim that the transfer merely involved "bookkeeping entries" and that nothing of value was actually exchanged.[7] Section 36-702(12) defines a transfer as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." Section 36-704(a) states that value "is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied."
Although the Abbotts claim that no value was exchanged, the record contradicts that assertion. ATI's 2004 federal tax return lists the debt due from API as an "other current asset" at the beginning of the year, but not at the end of the year after the December 2004 transfer took place. Furthermore, the Abbotts issued a new promissory note after the December 2004 transfer. The first promissory note, dated August 20, 2004, stated that the amount due from ATI to the Abbotts was $647,071.61. The Abbotts then reissued the promissory note for $544,538.32, after the December 2004 transfer. The UFTA clearly states that value is exchanged when the transfer is made to satisfy an antecedent debt. The first promissory note establishes that there was an antecedent debt; the second demonstrates that the December 2004 transfer was made to secure part of that debt. Therefore, value was exchanged, and a transfer was made.

(b) Present Claims
[9] ETSI and the Abbotts next contend that Dominguez did not have a claim at the time of the December 2004 transfer, as required by § 36-706(b). Under § 36-702(3), a claim is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Under § 36-702(5), a debt is defined as "liability on a claim," while under § 36-702(6), a debtor is defined as "a person who is liable on a claim."
[10] The district court found that Dominguez' claim arose at the time of ATI's discriminatory conduct and that therefore, for purposes of § 36-706(b), Dominguez was a present creditor when the December 2004 transfer occurred. ETSI and the Abbotts claim that Dominguez did not have a "right to payment" until the judgment was rendered in 2005. We currently do not have any case law regarding when a person with a tort or other legal claim against another becomes a "creditor" for purposes of the UFTA. However, § 36-712 requires that the UFTA be applied and construed in conformity with other states.
[11, 12] Courts deciding this issue under the UFTA have held that a "creditor" includes a person with unlitigated legal claims against the debtor.[8] In support of this decision, courts point to the "`whether *703 or not the right is reduced to judgment'" language contained in the definition of "claim."[9] "Certainly, a person holding any disputed, contingent, or unliquidated tort or contract claim has no right to enforce payment of damages until a judgment enters against the defendant. Nonetheless, this does not diminish the claim for payment of damages that the plaintiff asserts when filing a lawsuit."[10] These courts have generally held that a "debtor-creditor relationship is created not by a judgment, but by the wrong which produces the injury; and it is the date of the wrongful act, not the date of the filing of the suit or of the judgment, which fixes the status and rights of the parties."[11]
Based on the requirements of § 36-712 and the decisions of other courts, we find that the district court did not err when it found that Dominguez had a claim at the time the December 2004 transfer took place. Under § 36-706(b), a transfer is considered fraudulent when the transfer is made to an insider for an antecedent debt, the debtor was insolvent at the time, and the insider knew or reasonably should have known that the debtor was insolvent. The Abbotts have admitted that ATI was insolvent at the time of the December 2004 transfer, and as the sole shareholders and directors of ATI, the Abbotts were insiders and knew that ATI was insolvent at the time of the December 2004 transfer. Finally, as previously mentioned, the December 2004 transfer was made to secure an antecedent debt, as memorialized by the promissory statements.
Under § 36-708(a)(1), Dominguez is entitled to an avoidance of the December 2004 transfer to the extent necessary to satisfy his judgment. Section 36-709(b)(1) entitles the court to enter judgment against "the first transferee of the asset," which the Abbotts were. In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[12] Having viewed the evidence in a light most favorable to ETSI and the Abbotts, we find that the district court did not err in determining that the December 2004 transfer was fraudulent as a matter of law, or in entering judgment against the Abbotts personally. We therefore affirm the judgment of the district court.

VI. CONCLUSION
We have determined we have jurisdiction of this case. We did not address the issue of mere continuation, because that was conceded by the Abbotts during oral arguments. After reviewing the evidence in a light most favorable to ETSI and the Abbotts, we also find that the December 2004 transfer from ATI to the Abbotts was a fraudulent transfer as a matter of law under § 36-706(b), that value was exchanged, and that Dominguez had a prior claim. Under § 36-708(a)(1), Dominguez *704 was entitled to an avoidance of the transfer, and § 36-709(b)(1) allowed the district court to enter judgment against the Abbotts personally. We therefore affirm the judgment of the district court.
AFFIRMED.
NOTES
[1] Poppert v. Dicke, 275 Neb. 562, 747 N.W.2d 629 (2008).
[2] Hughes v. Omaha Pub. Power Dist., 274 Neb. 13, 735 N.W.2d 793 (2007).
[3] Id.
[4] Eggers v. Rittscher, 247 Neb. 648, 529 N.W.2d 741 (1995).
[5] Japp v. Papio-Missouri River NRD, 271 Neb. 968, 716 N.W.2d 707 (2006).
[6] See Haber v. V & R Joint Venture, 263 Neb. 529, 641 N.W.2d 31 (2002).
[7] Brief for appellants at 15.
[8] Sands v. New Age Family Partnership, Ltd., 897 P.2d 917 (Colo.App.1995).
[9] Id. at 921. See, also, Friedman v. Heart Inst. of Port St. Lucie, 863 So.2d 189 (Fla. 2003); Gulf Insurance Co. v. Clark, 304 Mont. 264, 20 P.3d 780 (2001); Klingman v. Levinson, 114 F.3d 620 (7th Cir.1997); U.S. v. Brickman, 906 F.Supp. 1164 (N.D.Ill.1995).
[10] Sands, supra note 8, 897 P.2d at 921. See, e.g., Tolle v. Fenley, 132 P.3d 63 (Utah App. 2006); Friedman, supra note 9; Gulf Insurance Co., supra note 9; Cox v. Hughes, 781 So.2d 197 (Ala.2000); Klingman, supra note 9; Brickman, supra note 9; Cook v. Pompano Shopper, Inc., 582 So.2d 37 (Fla.App.1991); Granberry v. Johnson, 491 So.2d 926 (Ala. 1986).
[11] Granberry, supra note 10, 491 So.2d at 928.
[12] Hughes, supra note 2.